**ALBUQUERQUE NAT. BANK**
v.
**CITIZENS NAT. BANK IN ABILENE et al.**
No. 14949.

United States Court of Appeals
Fifth Circuit.

May 14, 1954.

Rehearing Denied June 25, 1954.

T. J. McMahon, Abilene, Tex., Hamilton E. McRae, F. H. Pannill, W. B. Browder, Jr., Midland, Tex., McMahon, Springer, Smart & Walter, Abilene, Tex., Stubbeman, McRae & Sealy, Midland, Tex., of counsel, for appellant.

William E. Collins, Dallas, Tex., Dallas Scarborough, Abilene, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., of counsel, for appellee Condor Petroleum Co.

E. L. Harwell, Abilene, Tex., Frank A. Liddell, Paul Port, Houston, Tex., Wagstaff, Harwell, Alvis & Pope, Abilene, Tex., Liddell, Austin, Dawson & Huggins, Houston, Tex., of counsel, for other appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

The controversy is between two banks, one in Texas and one in New Mexico, each named as executor and as trustee in the will of Ellis A. Hall, deceased, over which shall administer certain corporate stock constituting the major asset in his estate. This appeal is from an interlocutory order granting an injunction, appealable under 28 U.S.C.A. § 1292(1), and the questions raised by the appellant relate to the jurisdiction of the district court and to the propriety of the injunction.

On August 8, 1953, evidently anticipating the dangers incident to a long trip by airplane, Ellis A. Hall executed his last will and testament. Nine days later, on August 17, 1953, Hall, his wife, Virginia H. Hall, a daughter, a daughter of his wife by a former marriage, and a young friend were all killed while Hall was flying his own airplane over Alaska.

By the terms of his will, Hall devised and bequeathed unto the Texas bank, The Citizens National Bank of Abilene, Texas, as trustee, "all the real and personal property I may own or be entitled to in the State of Texas at the time of my death." He devised and bequeathed unto the New Mexico bank, Albuquerque National Bank of Albuquerque, New Mexico, as trustee, "all the real and personal property I may own or be entitled to in the State of New Mexico at the time of my death." The terms of the trusts are identical and the surviving beneficiaries are the same, namely: the four Hall children, Richard A. Hall, age 24, James E. Hall, age 18, Charles Layton Hall, age 14, and Betty Jean Hall, age between 2 and 3.* As to executors, the will provided as follows:

"I hereby nominate and appoint Albuquerque National Bank, of Albuquerque, New Mexico, and Virginia Hockenhull Hall, as Co-Executors under this will, to serve without bond, giving and granting unto them full and complete power to do any and all things requisite to carry out the terms hereof; and in the event it shall be necessary to have ancillary administration in Texas, I hereby nominate Citizens National Bank of Abilene, Texas, to serve as Executor for the purpose of administration in Texas, without bond."

The will was executed at Albuquerque, New Mexico, and described the testator as residing at that place, and it is not questioned by any of the parties that that was his domicile at the time of the execution of the will and at the time of his death.

A very large part of the estate of the decedent consisted of shares of stock in the Condor Petroleum Company, a Texas corporation, which shares of stock had a value of several million dollars. The certificates representing the shares were in the decedent's safety deposit box in the New Mexico bank, and after his death passed into the possession of that bank. The New Mexico bank obtained possession of the will and on or about September 23, 1953, filed it for probate in the probate court of the County of Bernalillo, New Mexico, and had the hearing for probate set for October 20,

* See opinion on petition for rehearing 212 F.2d 951.

1953. Without awaiting that hearing, the New Mexico bank had itself appointed as special administrator by said probate court and on October 3 made written request upon Condor Petroleum Company to transfer the shares of stock of said corporation registered in the name of the decedent, Ellis A. Hall, to three named individuals and to the New Mexico bank as special administrator; and further requested that a stockholder's meeting be called in Abilene, Texas, on October 10, 1953, for the purpose of electing four new directors. On October 5, 1953, the Condor Petroleum Company returned the certificates to the New Mexico bank, stating that "upon the advice of our attorneys, we are not at this time in position to transfer the above certificates of stock as outlined in your letter of October 3, 1953."

On October 20, 1953, the will was probated, and immediately thereafter the New Mexico bank filed in the same probate court a "Petition for Construction of Will and Directions to Executor", in which it called for decision of the question as to whether the shares of stock in Condor Petroleum Company, and also other shares of stock in other Texas corporations, passed under the will to the Texas bank, as trustee, or to the New Mexico bank, as trustee. This action was later transferred to the District Court of Bernalillo County, New Mexico, where it is still pending.

On the same day, October 20, 1953, and a short time before the petition for construction of the will was filed in New Mexico, the Texas bank had itself appointed temporary administrator of the estate in Texas and obtained an ex parte order authorizing it to take possession of and to preserve the estate in Texas, and to bring suits for injunction against the Condor Petroleum Company and the New Mexico bank with respect to the shares of stock in Condor Petroleum Company. Later on the same day, but still before the petition for construction of the will was filed in New Mexico, the Texas bank filed in the District Court of Taylor County, Texas, a bill seeking to assure its possession of the estate located in Texas, to enjoin Condor Petroleum Company from issuing new certificates to the New Mexico bank, and to enjoin the New Mexico bank from transferring, selling or assigning said shares of stock or the certificates which represent them. The bill prayed also that the plaintiff have judgment for general relief. On the same day, the judge of the Texas state court entered an ex parte order commanding the New Mexico bank to appear on October 30, 1953, to show cause why a temporary injunction should not be granted. On October 29, 1953, the New Mexico bank removed this suit to the United States District Court for the Northern District of Texas, and it was in this suit that the judgment here appealed from was subsequently rendered.

On the same day on which it removed the Texas state court case to the United States District Court for the Northern District of Texas, October 29, 1953, the New Mexico bank filed in the United States District Court for the District of New Mexico a Civil Action seeking to establish its title to and to remove a cloud on its title to the certificates of stock representing shares of Condor Petroleum Company, and, also, to certificates of stock representing shares in two Texas banks. Pursuant to 28 U.S.C.A. § 1655, said District Court ordered the Texas bank to appear or plead to the complaint by November 23, 1953.

On November 9, 1953, the Texas bank filed its amended complaint in the United States District Court for the Northern District of Texas in which it sought to enjoin the New Mexico bank from prosecuting either of the suits then pending in the State of New Mexico and sought to enforce the Texas bank's claim and title to the shares of stock as temporary administrator, as executor, and as trustee, free from any claims of the New Mexico bank. The next day, November 10, 1953, was the day that had been set for the hearing of the construction of will suit in the district court of Bernalillo County, New Mexico. Also, on November 9, 1953, the Condor Petroleum Company filed in

the cause then pending in the United States District Court for the Northern District of Texas its answer in the nature of a bill of interpleader, asking that the court order the administration of the personal property belonging to the estate in Texas to include the stock of Condor Petroleum Company and praying that both banks be enjoined and restrained from further prosecuting the suits then pending or any other suits they might file. The judge of the District Court of the United States for the Northern District of Texas thereupon on the same day, November 9, 1953, issued a temporary restraining order, restraining the New Mexico bank from continuing the prosecution of the construction of will suit pending before the District Court of Bernalillo County, New Mexico, and of the Civil Action brought by the New Mexico bank in the United States District Court for the District of New Mexico, and an order to show cause returnable on November 20, 1953, as to why the New Mexico bank should not be temporarily enjoined from prosecuting any other suit or proceeding involving the issues before the court in said case.

On November 20 and 21, 1953, a full hearing was had in the United States District Court for the Northern District of Texas on the matter of the granting vel non of the interlocutory injunction, and at the conclusion of that hearing the District Court granted the interlocutory injunction enjoining the New Mexico bank, its officers, agents, employees and attorneys, from continuing the prosecution of the construction of will suit before the District Court of Bernalillo County, New Mexico, and the Civil Action filed by said bank before the United States District Court for the District of New Mexico, or from filing or prosecuting any other suit or proceeding other than the action in which the injunction was issued insofar as the same involves the issue of title and right to possession of shares of stock in Condor Petroleum Company. There were further related terms of the injunction. This appeal is from that order granting an interlocutory injunction.

It appears that subsequent to the granting of that injunction, the judge of the United States District Court for the District of New Mexico took cognizance of the fact that the New Mexico bank and its attorneys were enjoined from continuing the prosecution of the case in that Court, appointed other attorneys as *amicus curiae*, heard evidence produced by them, and entered a default judgment against the Texas bank and a judgment quieting title to the certificates of stock in the New Mexico bank as executor. In a memorandum accompanying the judgment, the judge of the United States District Court for the District of New Mexico, expressed his opinion also that there was no ambiguity as to the ownership of the stock by the New Mexico bank as trustee, "In fact, an examination of the will itself appears to be sufficient to answer the question. The language is clear and the intention of the testator is not in doubt. Ambiguity does not exist."

To the direct contrary, the United States District Court for the Northern District of Texas, in the order granting the interlocutory injunction, had said:

"The Court finds upon considering the terms of the will of Ellis A. Hall, Deceased, dated August 8, 1953, and the surrounding circumstances of the decedent, that it was the intention of the Testator that the shares of stock held by the decedent in corporations domiciled and doing business in Texas, including shares in Condor Petroleum Company, The Citizens National Bank in Abilene, and Farmers and Merchants National Bank, Abilene, Texas, be considered as property which the decedent 'owned' or 'was entitled to in the State of Texas' and as such that same passed to The Citizens National Bank in Abilene as Trustee and as Ancillary Executor."

That Court had added the following limitation: "The finding of the Court herein as to the intention of the Testator, how-

ever, is only made incident to the Court's jurisdiction with reference to the location of the property."

■ The property of a person while living, wherever such property may be located and of whatsoever it may consist, is for many purposes considered as a unit. So, for practical purposes, the estate of a deceased person is often considered as a whole; and difficulty of administration is encountered if that portion of it in each state is to be treated as a completely separate affair. Without co-operation between the states, and between the administrators or executors in different states, the expense and difficulty of administration often operate to the serious detriment of the estate as a whole due to the fact that our States are for most purposes entirely separate legal sovereignties. A.L.I., Restatement, Conflict of Laws, p. 560; 3 Beale, Conflict of Laws, p. 1444, Sec. 465.1.

■ Insofar as lands or immovables are concerned, it is universally recognized that, apart from statute, administration of them must be had at the situs. A.L.I., Restatement, Conflict of Laws, Sec. 487; 3 Beale, Conflict of Laws, Sec. 487.2; 11 Am.Jur., Conflict of Laws, Sec. 48; 57 Am.Jur., Wills, Sec. 1039. Lands are not directly involved in the controversy between the present parties, but the fact that a considerable part of the estate consists of income producing lands in Texas demonstrates the necessity for administration in that State.

As to movables, it is necessary that we keep in mind "the independence of the two questions, what happens to the ownership of chattels upon the death of the owner, and what happens to the administered estate ripe for distribution." 2 Beale, Conflict of Laws, Sec. 300.1, p. 1028. For that purpose, Professor Beale employs the words "administration" and "distribution", the former as meaning the collection of assets, particularly personal assets, and with them paying debts, including taxes and costs of administration, until all are paid or the assets exhausted; then, "If after full administration a balance remains, the payment of the balance to those entitled to it is here called distribution." 3 Id. Sec. 465.1, p. 1444. In the present case we are in the stage of the administration of the estate, though we must look forward to its ulti-

mate distribution in considering the propriety of the injunction against the New Mexico bank from continuing the prosecution of the action in the District Court of Bernalillo County, New Mexico, for the construction of the will.

■ Each state has the right to control and administer the personal assets of a deceased person found within its borders and to satisfy debts and obligations due to its own citizens. Baker v. Baker, Eccles & Co., 242 U.S. 394, 401, 37 S.Ct. 152, 61 L.Ed. 386. The New Mexico bank derives its appointment as executor from a New Mexico court and, at least during the administration stage, it is not entitled to recognition of its status in Texas nor to possession of assets located in Texas. Hare v. Pendleton, Tex.Civ.App., 214 S.W. 948, 953; Saner-Ragley Lumber Co. v. Spivey, Tex.Com.App., 238 S.W. 912, 915; Robinson v. First National Bank of Plainview, 5 Cir., 55 F.2d 209, 211; cf. Restatement, Conflict of Laws, Sec. 507. "To the extent that he is entitled to receive the assets after administration here, his title is recognized. But he will not be permitted to intermeddle while the courts of this state are exercising their jurisdiction." Saner-Ragley Lumber Co. v. Spivey, supra, 238 S.W. at page 915.

■ Whether as a matter of strict jurisdiction, or by comity so well recognized as to have the same practical effect, the probate of a will at the recognized domicile of the testator is binding on all questions as to the legality of the will with regard to personal estate elsewhere. 57 Am.Jur., Wills, Sec. 956; 3 Beale, Conflict of Laws, Sec. 469.1, p. 1463. The validity of Mr. Hall's will is not questioned by anyone, but its construction, meaning, and effect are sharply in dispute. The Texas courts have declared, "It is a universal rule recognized in this state that, as a matter of comity, the laws of the domicile of the intestate will control in the succession of movable or personal property of his estate." Saner-Ragley Lumber Co. v. Spivey, supra, 238 S.W. at page 915. As to the construction of a foreign will, the A.L.I., Restatement, Conflict of Laws, Sec. 308, states the rule as follows:

"The meaning of words used in a will of movables, in the absence of controlling circumstances to the con-

trary, is determined in accordance with the usage at the domicil of the testator at the time of making the will."

See also, 2 Beale on Conflict of Laws, Sec. 308.1; 11 Am.Jur., Conflict of Laws, Secs. 169, 174; cf. Lanius v. Fletcher, 100 Tex. 550, 101 S.W. 1076, 1077.

The domiciliary law and also the facts pertinent to construction of a will as an entirety and in each of its parts can ordinarily be best determined and applied by the courts of the state of the domicile, and accordingly a judgment by a competent court in the state of domicile, insofar as the judgment relates to movables, will generally, if not always, be followed by the courts in other states on questions as to the construction of the will and the rights of persons claiming under it. A. L.I., Restatement, Conflict of Laws, Sec. 470; 2 Beale on Conflict of Laws, p. 1038, Sec. 308; 57 Am.Jur., Wills, Sec. 1039; 69 C.J. 866, Note 19; 21 C.J.S., Courts, § 544(b), p. 849; Annotations 71 A.L.R. 677, 131 A.L.R. 1024, 1025. It would be premature for us to hold that the judgment of the New Mexico state court charged with the construction of the will under the laws of that State will be controlling as to the distribution of the movables located in Texas. It is enough for present purposes to say that that judgment, when fairly rendered, will at least be highly persuasive, and that there is no present conflict of jurisdiction between the New Mexico state court and the federal district court in Texas. Even if we assume that the two courts have concurrent jurisdiction, and that the federal district court in Texas first took possession of the res, we are governed by what was said in Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 198, 55 S.Ct. 386, 390, 79 L.Ed. 850:

"While it is often said that, of two courts having concurrent jurisdiction in rem, that one first taking possession acquires exclusive jurisdiction, * * * it is exclusive only so far as its exercise is necessary for the appropriate control and disposition of the property. The jurisdiction does not extend beyond the purpose for which it is allowed, to enable the court to exercise it appropriately and to avoid unseemly conflicts. * * * The other court does not thereby lose its power to make orders which do not conflict with the authority of the court having jurisdiction over the control and disposition of the property."

■ There is no effort in the New Mexico state court to gain possession of any property, nor to interfere with the administration proper of the estate in Texas. We think it clear, therefore, that the district court erred in enjoining the New Mexico bank, its officers, agents, employees and attorneys, from continuing the prosecution of the action before the District Court of Bernalillo County, New Mexico.

■■ We think that the action pending in the United States District Court for the Northern District of Texas is an action in rem and has been such since it was first instituted in the Texas state court, and that adequate provisions for service of process in such an action upon non-residents of the State of Texas appear in the Texas Statutes and Rules, Articles 1975, 1976, Vernon's Ann. Civil Statutes of Texas, and Rule 108 of Texas Rules of Practice and Procedure, and also in 28 U.S.C.A. § 1655. The action in the United States District Court for the District of New Mexico is professedly strictly a suit in rem. The rule as to actions in rem has been stated in Palmer v. State of Texas, 212 U.S. 118, 125, 29 S.Ct. 230, 232, 53 L.Ed. 435, as follows:

"If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty."

See also, Kline v. Burke Construction Co., 260 U.S. 226, 229, 43 S.Ct. 79, 82, 67 L. Ed. 226.

■ It remains to determine whether the shares of stock in Condor Petroleum Company had such a situs in Texas as would justify an administrator appointed there to take possession and as would sustain the in rem jurisdiction of the Federal District Court in Texas. There are cases which hold that corporate shares have a dual existence, a situs both in the state of incorporation and in

the state where the stockholder resides and the certificate is located. Benson v. Greenville National Exchange Bank, Tex.Civ.App., 253 S.W.2d 918, 928; Direction der Disconto-Gesellschaft v. U. S. Steel Corporation, D.C., 300 F. 741, 746, affirmed 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495. The rule in the majority of jurisdictions is stated in 21 Am.Jur., Executors and Administrators, Sec. 52, p. 403:

> "The general rule appears to be well settled that regardless of the place where the certificates happen to be, the state in which a corporation has been organized is the situs of its shares of stock, for purposes of administration, rather than the state of the decedent's domicil, and particularly so if the corporation also conducts its business in the state where it has been organized."

See also, Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 132 F.2d 887, 891, 145 A.L.R. 612; Grayson v. Robertson, 122 Ala. 330, 25 So. 229, 232; Annotations 72 A.L.R. 179, 181, 145 A.L.R. 1393. Cf. Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 13, 20 S.Ct. 559, 44 L.Ed. 647; State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 181, 62 S. Ct. 1008, 86 L.Ed. 1358; Wirt Franklin Petroleum Corporation v. Gruen, 5 Cir., 139 F.2d 659, 660.

Further considerations peculiar to Condor Petroleum Company localized the situs of its shares in Texas for purposes of administration. Each of the certificates was held subject to an option to purchase by the corporation itself. On January 25, 1936 there was adopted

> "An amendment to the charter of Condor Petroleum Company to provide that the corporation shall have a first option to purchase shares of common non-par stock at the bona fide price agreed upon by the stockholder and the prospective purchaser, the stockholder having the right to dispose of his stock to others should the corporation fail to exercise its option to purchase the stock within thirty days after receipt of the written offer from the stockholder."

The corporation was not only organized in Texas, but it conducted all of its business in that State.

We hold that the District Court for the Northern District of Texas acquired jurisdiction of the res to the exclusion of the United States District Court for the District of New Mexico.

■■■■ This Court, of course, has no jurisdiction to review any proceedings had in the United States District Court for the District of New Mexico. As to the order of the Texas Federal District Court, we think that it was erroneous for that Court to express even a tentative opinion on the construction of the will and on whether the shares of stock in Texas corporations passed to the Texas bank as trustee. The question before the court was merely the situs of the shares for purposes of administration, a question entirely independent from the construction of the will. The terms of the will itself drew a sharp distinction between the administration and the distribution of the estate. Administration of the estate was entrusted to the New Mexico bank as executor, and, if ancillary administration should be necessary, then to the Texas bank as executor for the purpose of administration in Texas. Independently of the terms of the will, we have indicated our view that ancillary administration in Texas is necessary, and we can see no escape from that conclusion in view of the presence in Texas of both movable and immovable assets. As to the distribution of the estate in Texas, any decree by the District Court for the Northern District of Texas should await the final conclusion of the construction of will suit pending in the New Mexico state court. We note in passing that counsel for the New Mexico bank conceded on oral argument that, in their opinion, the New Mexico bank would be bound by such a decree rather than by the judgment rendered by the District Court of the United States for the District of New Mexico.

■■■■ The New Mexico bank has urged upon us that, as the domiciliary executor of such a large estate, it must raise over six million dollars to pay the federal estate tax by its due date, November 10, 1954, or the estate will suffer a considerable loss in interest. It may be that a duty as to the estate tax is imposed on all administrators and executors, wherever located. See 26 U.S.C.A. § 821(a), 930, Regulations of Internal Revenue Com-

missioner 105, Sec. 81.64. However that may be, the will expresses the testator's wish that both banks cooperate, and under the law it is their duty to work together for the benefit of the estate. Each bank stands in a position of trust to the beneficiaries. It is the duty of each to place the welfare of the beneficiaries above its own private interest. If either should fail to do so, it would be legally responsible for any resultant damage. It may be that, as to the litigation which has already ensued, the court or courts having jurisdiction of the accounting of the respective banks as administrator or as executor may determine that either or both of the actions filed in the respective Federal courts were unnecessary from the point of view of the welfare of the beneficiaries and that the attorney's fees and court costs of such action, or a part thereof, should not properly be charged against the estate. That is a question on which we have no authority to pass and on which no court could properly pass without more complete information than is contained in the present record. We merely note the question to call it to the attention of the guardian *ad litem* or representative of the minor children and of the court having jurisdiction of the accounting of the respective executors and administrators. We further entertain the hope that a consideration by each bank of the paramount duty owed to the estate and to the beneficiaries and of the possible consequences of a breach of such duty may result in more effective cooperation between these two banks in the future.

As indicated in the opinion, the judgment appealed from is reversed in part and affirmed in all other parts, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed in part and affirmed in part.

### On Petition for Rehearing.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

In the opinion it was stated:

"The terms of the trusts are identical and the surviving beneficiaries are the same, namely: the four Hall children, Richard A. Hall, age 24, James E. Hall, age 18, Charles Layton Hall, age 14, and Betty Jean Hall, age between 2 and 3."

That sentence is withdrawn, and in its place there is substituted the following:

"The terms of the trusts are identical and the surviving beneficiaries are the same, namely: the three Hall children, Richard A. Hall, age 24, James E. Hall, age 18, Charles Layton Hall, age 14, and Catherine Brandenburg, age between 2 and 3, a step-granddaughter of Ellis A. Hall."

This Court's finding that there is a necessity for administration of the estate of Ellis A. Hall in Texas was made only insofar as necessary for the disposition of this case, and was not intended to be binding upon any probate court in Texas, if indeed this Court had such power. It is clear also that the interlocutory injunction appealed from in no way restrained any interested party from going into a Texas probate court and urging limitations upon the authority of the Texas Bank in the handling or disposition of the estate, and that no further order of this Court in that respect is required. Except as herein stated, the petition for rehearing is denied.

