SIGNAL PROPERTIES, INC., Plaintiff-Appellee,

v.

N. Bus FARHA et al., Defendants-Appellants.

No. 72–3375.

United States Court of Appeals,
Fifth Circuit.

July 20, 1973.

Rehearing Denied Aug. 14, 1973.

Gerald Sawatzky, Wichita, Kan., J. Michael Willatt, Houston, Tex., for defendants-appellants.

C. Michael Gallman, O. Otis Bakke, Houston, Tex., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and CLARK, Circuit Judges.

PER CURIAM:

On December 5, 1971, N. Bus Farha and other parties holding record title to a certain tract of land in Galveston County, Texas, brought an action in Sedgwick County, Kansas, against Signal Properties, Inc., seeking to recover the reasonable value of Signal's use and occupation of the land. Signal purchased the property in 1964 from a third party who had purportedly acquired title to the property by adverse possession.

No question is here raised as to the Kansas Court's personal or subject matter jurisdiction of this action. On February 11, 1972, Signal filed a trespass to try title action in the United States District Court for the Southern District of Texas and procured from that court an injunction prohibiting the Farhas from bringing the pending Kansas court action to trial. Since such an injunction was not in aid of the district court's jurisdiction, it was barred by 28 U.S.C. § 2283 and cannot stand.

It may well be, and we assume arguendo, that this trespass to try title proceeding is an *in rem* proceeding or a *quasi in rem* proceeding. *See* Reed v. Turner, 489 S.W.2d 373 (Tex.Civ.App. 1972); State v. Bryan, 210 S.W.2d 455 (Tex.Civ.App.1948), writ refused n.r.e.; *cf.* Lefkowitz v. McQuagge, 296 F.2d 50 (5th Cir. 1961). Under this assumption, the federal court first acquired jurisdiction of the *res*—the title to the land. (The Kansas proceeding is conceded by all to have been an *in personam* action.) Thus, other courts are excluded from exercising jurisdiction which would interfere with the federal's possession and control of the property. *See* Miller v. Miller, 423 F.2d 145 (10th Cir. 1970). In two *in rem* or *quasi in rem* proceedings this factor could be dispositive; however, the Kansas *in personam* action cannot result in any judgment or decree which would interfere with the constructive possession of the federal court.

■ A court may properly adjudicate rights in property in the possession of another court and may render any judgment "not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property." United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938). *See also* Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946); Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939); United States v. Certified Industries, Inc., 361 F.2d 857 (2d Cir. 1966); Banco Nacional de Cuba v. Sabbatino, 307 F.2d 845 (2d Cir. 1962), rev'd on other grounds, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); Albuquerque National Bank v. Citizens National Bank, 212 F.2d 943 (5th Cir. 1954); Purcell v. Summers, 126 F.2d 390 (4th Cir.), cert. denied, 317 U.S. 640, 63 S.Ct. 32, 87 L.Ed. 516 (1942).

■ While such title issues as are first determined by the Kansas court may become binding on the parties to the Texas District Court action under the doctrines of res judicata or collateral estoppel if properly set up by plea in the latter court, the mere act of resolving those disputed issues which are common to both proceedings in Kansas will not disturb the Texas District Court's constructive possession or control of the land. An irreconcilable conflict between the state and federal judiciaries would only arise if both sought to exercise authority to dispose of the same *res*. *See* 1A J. Moore, Federal Practice ¶¶ O.222 and O.223.

■ Section 2283 was enacted to limit federal injunctions of state court proceedings in ordinary litigation between private litigants to those situations necessary to avoid unseemly conflict between state and federal courts. It is entitled to a strict construction. Atlantic Coast Line Ry. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). It is well settled that the statute's prohibition cannot be evaded by addressing the order to the parties rather than to the state court. Atlantic Coast Line Ry. v. Brotherhood of Locomotive Engineers, *supra*. Since this injunction does not come within any of the statute's specifically defined exceptions, it must be vacated. The cause is remanded to the district court for further proceedings not inconsistent herewith.

Vacated and remanded.

AINSWORTH, Circuit Judge (dissenting):

The majority opinion ignores a long-standing rule of law that a federal court which obtains custody over property can restrain the litigants from asserting in another court any "claim, right, or title" to the same property. *See* Julian v. Central Trust Co., 193 U.S. 93, 114, 24

1. *See also* Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 89, 43 S.Ct. 480, 484, 67 L.Ed. 871 (1923): "The court which first acquired jurisdiction through possession of the property is vested, while it holds possession, with the power to hear and determine all controversies relatting thereto. It has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and jurisdiction."

The majority opinion relies on United States v. Klein, 303 U.S. 276, 281, 58 S.Ct. 536, 538, 82 L.Ed. 840 (1938), for the proposition that a court may properly adjudicate rights in property in the possession of another court and may render any judgment "not in conflict with that court's authority to decide questions within its jurisdiction and to make effective such decisions by its control of the property." In the present case, the Kansas court is being asked by the plaintiffs to decide a question within the jurisdiction of the Texas federal district court, namely, the "title to the land in question." Thus, the quotation from *Klein* is apparently in conflict with the result reached by the majority opinion.

Moreover, a review of the facts in *Klein* confirms that the case lends little or no support to the majority opinion. In *Klein* the United States district court held money for bondholders who could not be located but who were awarded the money by a decree in favor of all bondholders similarly situated to plaintiffs in the lawsuit. Several years later a suit was filed by the Escheator of Pennsylvania in a state court to obtain a decree of escheat. This subsequent state court suit did not involve the same controversy as was decided in the federal district court, but rather was a formality necessary to perfect the state's claim to the money as a transferee of the bondholders. Unlike *Klein*, in the instant matter the state court suit in Kansas presents issues identical to the suit in the Texas federal district court.

2. The Pretrial Conference Order in the District Court of Sedgwick County, Kan-

S.Ct. 399, 408, 48 L.Ed. 629 (1904).[1] For this reason, I respectfully dissent.

The majority assumes for purposes of its decision that the federal district court in Texas had *in rem* jurisdiction over the land at issue. In the Kansas suit the parties agreed that title to the land was an issue.[2] Accordingly, I am

sas, was signed by the judge and approved by attorneys for plaintiffs and defendants. The Order summarized the factual and legal issues as follows:

6. The factual issues herein are:

(a) Has Signal Properties, Inc., or its predecessors in interest adversely possessed the 25 acres in question for a sufficient period of time to comply with Article 5509 of Vernon's Civil Statutes of the State of Texas, under a deed or deeds for the period from December 31, 1964, through December 2, 1971?

(b) Has Signal Properties, Inc., or its predecessors held under a recorded warranty deed and paid the taxes owing on the land in question before they became delinquent for a sufficient period of time to comply with Article 5509 of Vernon's Civil Statutes of the State of Texas, or were such taxes paid by or on behalf of plaintiffs or their predecessors for one or more years thereof?

(c) Has Signal Properties, Inc., or its predecessors in interest adversely possessed the 25 acres in question for a sufficient time to comply with Article 5510 of Vernon's Civil Statutes of the State of Texas between 1922 and December 2, 1971?

(d) Is the land in question completely surrounded by other lands of the defendant?

(e) Has Signal Properties, Inc., or any of its predecessors in interest cultivated and used for agricultural purposes at least one-tenth of the 25 acres in question continuously for a particular ten-year period prior to December 2, 1971, and, if so, during said time was the party so cultivating in actual adverse possession thereof as contemplated by Article 5515 of Vernon's Civil Statutes of the State of Texas?

(f) Are plaintiffs or their predecessors the true owners of title to the land in question, and were they such owners from 1964 to the present time?

(g) Has defendant Signal Companies, Inc. (formerly Signal Oil & Gas Company) used and occupied the 25 acres involved herein? If so, for what period of time and what is the reasonable value of such use and occupation?

persuaded by the following reasons expressed by the district judge for issuing the injunction:

"A. Both the action in this Court and in the District Court of Sedgewick County, Kansas, involve a determination of the actual ownership of real property located in Galveston County, Texas. Although the Kansas suit is couched as an action for recovery of the value of the use and occupancy of land, that Court must inevitable [sic] decide the present titleholder before awarding damages (which are called rental), if any. That is what is proposed to be litigated in the Kansas action, as admitted in open Court by counsel for defendants here, and as reflected in the pretrial order entered in the Kansas case. Moreover, counsel for defense admitted they could succeed in the Kansas action and fail in the Texas action and thus, obtain damages for use and occupancy of land to which they had no title. This would be manifestly unfair and inequitable to plaintiffs here.

"B. In diversity actions, Texas law is required to be applied to determining title to land located in Texas. Texas courts have held that real property is *exclusively* subject to the laws of the sovereignty within whose territory it is situated. Therefore, the Kansas court has no *in rem* jurisdiction over a *res* located within the control of another state.

"C. For the Kansas Court to determine possessory title would effectively interfere with, if not deprive, this Court of its jurisdiction. To prevent this interference with this Federal

---

(h) Has defendant Signal Oil & Gas Company used and occupied the 25 acres involved herein? If so, for what period of time and what is the reasonable value of such use and occupation?

(i) Has defendant Signal Properties, Inc. used and occupied the 25 acres involved herein? If so, for what period of time and what is the reasonable value of such use and occupation?

(j) Did defendants or their predecessors recognize the ownership as being in plaintiffs or their predecessors?

(k) Did plaintiffs or their predecessors permit use of the land by defendants or their predecessors?

(l) Did defendants or any of them ever give actual notice to plaintiffs or their predecessors of their alleged adverse possession?

7. The legal issues herein are:

(a) Does an implied contract to pay reasonable value to the owner of the land in Texas for use and occupation arise when the defendants, or any of them, use or occupy land owned by the plaintiffs or their predecessors under the facts and circumstances of this case?

(b) What is required of Texas law to acquire title to land by adverse possession?

(c) Under the undisputed facts herein was there adverse possession for the requisite period of time by defendants or their predecessors?

(d) Must defendants prove by clear and satisfactory evidence every fact necessary to sustain title by adverse possession?

(e) Are the Texas statutes of limitations suspended or tolled as to remaindermen until the owner of the life estate dies?

(f) Are the Texas statutes of limitations tolled for one year as to heirs following death of the owner when the estate is not probated?

(g) Are plaintiffs' claim barred by the Kansas or Texas statutes of limitations?

(h) What is the effect of plaintiffs' payment of taxes on the land in question?

(i) What is the effect of payment of taxes by Signal Companies, Inc. (formerly Signal Oil & Gas Company)?

(j) What is the effect of payment of taxes by Signal Properties, Inc.?

(k) Are plaintiffs' claims barred under the doctrine of *res judicata?*

(l) Did the recording by Signal Oil & Gas Company of the deed from Butler in 1964, and the deed from Signal Companies, Inc. to Signal Properties, Inc., constitute notice to plaintiffs or their predecessors of claims of adverse possesion?

(m) Was Signal Oil & Gas Company under a duty to inform plaintiffs or their predecessors of the transaction with Butler, and of any intent they may have had regarding adverse possession?

Court's consideration and disposition of this case, a preliminary injunction must issue."

We should also consider the impracticality and inconvenience of trying title to Texas land in a distant Kansas court.

The anti-injunction statute, 28 U.S.C. § 2283 (1970), presents no obstacle in this case. A specific exception permits a federal district court to issue an injunction to stay proceedings in a state court where necessary in aid of the federal court's jurisdiction. Here the district court should be able to issue an injunction in aid of its jurisdiction to prevent the Kansas court from continuing multiplicitous proceedings, from rendering a decision which could effectively deprive the federal court of its *in rem* jurisdiction through principles of *res judicata* and collateral estoppel, or from rendering a· decision potentially inconsistent with a decision of the federal district court.

We previously summarized the law applicable to this case in Pacific Indemnity Company v. Acel Delivery Service, Inc., 5 Cir., 1970, 432 F.2d 952, 954, as follows:

> The language of § 2283 is explicit in defining the circumstances in which a federal court may stay proceedings in a state court; however, certain timeworn judicially declared exceptions do exist. Thus, it is said that where the jurisdiction over the proceedings is *in rem* or *quasi in rem*, "[T]he state or federal court having custody of such property has exclusive jurisdiction to proceed." Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964).

*See also* Jett v. Zink, 5 Cir., 1973, 474 F.2d 149, 151, where identical issues, concerning the validity of an agreement to define the parties' interests in an oil field, were pending in both a state and federal court in Alabama. We declined to enjoin the state court suit because the federal court's jurisdiction in that case was *in personam*, but we said, however, that it would be "inconceivable" to allow the same issues to be pending simultaneously in state and federal courts if the federal court had exclusive jurisdiction of the *res*. 474 F.2d at 155.

I would adhere to the rules of law enunciated previously by the Supreme Court and our recent Fifth ·Circuit cases, and affirm the district court decision.