959 F.2d 233
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karl BRADLEY and Johnny M. Bradley, Plaintiffs-Appellants,
v.
Asa R. LITTLE, Farris H. Gillespie and Juanita Robinson,
Defendants-Appellees,
J.M. Richardson, Defendant.
 No. 91-5562.
 United States Court of Appeals, Sixth Circuit.
 March 27, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and CHURCHILL, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs in this federal action seek to enjoin a state court proceeding instituted by defendants to quiet title to a 5.94 acre area of land. The issue on appeal is whether the district court properly dismissed plaintiffs' suit on a motion for summary judgment for lack of jurisdiction under the Anti-Injunction Act, 28 U.S.C. § 2283. We conclude that the district court correctly interpreted the Anti-Injunction Act and properly dismissed this action for lack of jurisdiction.
 
 I.
 
 2
 In 1944, the government deeded approximately 57 acres to James Mynhier, the grandfather of plaintiff Johnny Mynhier Bradley. In 1955, E.H. & Emma Robinson conveyed the land directly north of the Mynhiers to their son and daughter-in-law, defendants Herman and Juanita Robinson. The property descriptions in the 1955 Robinson deed matched the calls and boundary descriptions of the 1944 Mynhier deed.
 
 
 3
 In 1969, the Robinsons purported to convey a one-half undivided interest in their property to co-defendants Farris H. and Ruby Gillespie. This deed was prepared by another defendant, Asa Little, a lawyer in Menifee County who had been hired by the United States Army Corp of Engineers in the years prior to check and certify titles for the acquisition of property for the construction of the Cave Run Lake. The description of the southern boundary in this 1969 deed did not match the 1955 deed. Instead, it purported to convey property up to 550 feet to the south of the earlier boundary line. Apparently this confusion stemmed from the use of a map which Little had previously used in connection with his duties under the contract with the Army Corp of Engineers.
 
 
 4
 In 1973, Mr. and Mrs. John L. Mynhier also hired Asa Little to convey their property to their daughter and son, plaintiff Johnny Mynhier Bradley and Walter Clay Mynhier, respectively. Little apparently again used the Army map for reference rather than the earlier 1944 Mynhier deed. According to Little, he furnished Mr. Mynhier with the Army map and conveyed property as it was identified by Mr. Mynhier. According to the 1973 Mynhier/Bradley deed, the northern boundary line of the Mynhier/Bradley property matched the description of the southern boundary line of the 1969 Robinson/Gillespie deed, setting the boundary between the properties at approximately 550 feet to the south of the boundary line as described in the 1944 Mynhier and 1955 Robinson deeds. Part of the land in dispute in the current state court proceeding is included in the 1969 Robinson/Gillespie deed and excluded from the 1973 Mynhier/Bradley deed.
 
 
 5
 In 1974, the government commenced a federal condemnation action to acquire a fee title and perpetual easements over three tracts of land: tracts 3204, 3204E, and 3322E. The government named all who they believed could potentially claim ownership to the condemned tracts of land. As to tracts 3204 and 3204E, only the Mynhiers and Bradleys were informed. The government referred to the ownership of these tracts as stemming from the 1973 Mynhier/Bradley deed. As to tract 3322E, the government's complaint issued notice to the Bradleys, Mynhiers, Gillespies, Robinsons, and others not parties to the current litigation, expressly noting the intent of its description to include "part of the disputed boundary" of several deeds, including the 1973 Mynhier/Bradley and 1969 Robinson/Gillespie deeds. Tract 3322E contained approximately 0.76 acres.
 
 
 6
 The Mynhiers and Bradleys were the only parties to appear at the condemnation proceedings. On March 31, 1977, the Mynhiers and Bradleys moved for judgment "to declare [them] as full owners of that real estate described herein known as 'Tract No. 3322E.' " The panel of land commissioners, in their report to the court dated April 8, 1977, mentioned the motion by the Mynhiers and Bradleys for judgment, but referred determination of the question to the court. In their findings of fact, the land commissioners stated: "The owners of said real estate at the time of taking were Walter Clay Mynhier and Margaret Mynhier, his wife, and Johnny Maxine Bradley and Karl Bradley, her husband. Herman Robinson and Juanita Robinson, his wife, and Farris H. Gillespie and Ruby Gillespie, his wife, and the unknown heirs of Julia Haig, may have an interest in the property."
 
 
 7
 The condemnation court's judgment dated May 16, 1977, adopts the report of the land commissioners in all respects, but does not address the motion of the Mynhiers and Bradleys to be named full owners of tract 3322E. By an order of the court also dated May 16, 1977, however, the Robinsons and Gillespies, and all other interested parties, were given 20 days to respond to the Mynhiers/Bradleys' motion for judgment. No response was filed. On June 30, 1977, funds amounting to $22,164.00 were disbursed to the Mynhiers and Bradleys.
 
 
 8
 In July 1990, the Robinsons and Gillespies initiated a Kentucky state court quiet title action, alleging ownership of part of the land subject to disputed boundaries based on deed and/or adverse possession claims. In November 1990, the Bradleys brought this federal action to enjoin the state court proceedings. The Bradleys also sought compensatory and punitive damages for the alleged professional malpractice of Little and "bad faith" initiation of legal proceedings brought to harass them and slander their title. The district court granted the defendants' motion for summary judgment, dismissing the Bradleys' federal action for lack of jurisdiction under the Anti-Injunction Act.
 
 II.
 The Anti-Injunction Act provides:
 
 9
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 10
 28 U.S.C. § 2283. The purpose of the Act is to avoid "the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630-31 (1977). It is an absolute prohibition against any injunction of any state-court proceedings unless the injunction falls within one of the three specifically defined exceptions. Id. at 630. The Supreme Court has recognized that the Act is to be construed strictly: "Any doubts as to the propriety of a federal injunction should be resolved in favor of permitting state courts to proceed in an orderly fashion to finally determine the controversy." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 297 (1970).
 
 
 11
 Plaintiffs seek injunctive relief under the Act's second and third exceptions, arguing that a federal court injunction against the state court proceedings is necessary "in aid of [the federal court's] jurisdiction" and "to protect or effectuate [the federal court's] judgments." The jurisdiction of the federal courts and the availability of injunctive relief under the Anti-Injunction Act in these circumstances are questions of law. Therefore our standard of review is de novo. McBee v. Abramajtys, 929 F.2d 264, 266 (6th Cir.1991).
 
 
 12
 The district court summarily dismissed plaintiffs' arguments under the "in aid of jurisdiction" exception as "baseless," though no analysis was provided. On appeal, plaintiffs pursue this theory more vigorously, arguing that the "in aid of jurisdiction" exception applies to in rem actions such as the 1974-1977 federal condemnation proceedings; that the federal court had jurisdiction over the now-disputed lands subject to the state court action and considered the issue of title to that land; and that an injunction by the federal court is required in order to aid the court "in its continued jurisdiction over the res."
 
 
 13
 This argument is without merit. The "in aid of jurisdiction" exception expresses the rule that if an action is in rem, the court first obtaining jurisdiction over the res may enjoin suits in other courts involving the same res. See Vendo, 433 U.S. at 642 (citing Toucey v. New York Life Ins. Co., 314 U.S. 118, 134-35 (1941)). Plaintiffs' assertion that the federal court maintains "continued jurisdiction over the res," however, is offered without citation to authority and is simply mistaken. There are no concurrent federal and state proceedings involving the same res, nor any continuing jurisdiction or supervision by the federal court of its prior judgment. Plaintiffs do not explain how the state court's resolution of the title dispute will disturb the federal court disposition in the prior condemnation proceeding, cf. United States v. 22,680 Acres of Land, 438 F.2d 75, 77 (5th Cir.1971), nor do they show the existence of an "irreconcilable conflict" between the federal and state courts. See Signal Properties, Inc. v. Farha, 482 F.2d 1136, 1137 (5th Cir.1973). We agree with the district court that the "in aid of jurisdiction" exception does not apply in this case.
 
 
 14
 The other exception to the Anti-Injunction Act offered by plaintiffs is of greater merit, but also ultimately fails. The so-called "relitigation" exception allows for federal court jurisdiction where "necessary ... to protect or effectuate its judgments" and permits, but does not require, injunctive actions against state judicial proceedings to avoid the relitigation of matters already presented to and decided by a federal court. In Chick Kam Choo v. Exxon Corp., 486 U.S. 140 (1988), the Supreme Court set forth some standards for application of the relitigation exception. "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation actually have been decided by the federal court." Id. at 148. The federal courts' review of the prior litigation must be "strict and narrow" and confined to "assess[ing] the precise state of the record and what the earlier federal order actually said; it [does] not permit the [federal] court to render a post hoc judgment as to what the order was intended to say." Id. (emphasis in original).
 
 
 15
 Plaintiffs' relitigation argument is founded on the assertion that the issue of title to the 5.94 acres of land currently disputed in the state court action was necessarily decided by the federal court in condemnation. Plaintiffs argue that the ownership of the disputed land was necessarily at issue in the condemnation proceedings because it may be traced to the same source of title (the 1944 Mynhier deed) as tract 3322E. Further, they contend that because they were compensated for the taking of tract 3322E, the condemnation court decided the disputed boundary issue in their favor.
 
 
 16
 The defendants argue that the question of ownership of the disputed land was never at issue in the codemnation proceedings as the 5.94 acres were not included in the description of any of the properties taken by the United States in the condemnation proceedings. Moreover, defendants argue, the issue of ownership to tract 3322E, while raised before the land commissioners, was never specifically or necessarily addressed or decided by the court in condemnation.
 
 
 17
 We are satisfied, upon review of the record, that the issues presented in the current state court action were never decided by the federal court in the condemnation proceedings. The task is to determine what the earlier federal order actually said. Chick Kam Choo, 486 U.S. at 148. We are not persuaded that title to the disputed land was expressly or necessarily decided in the condemnation action. Moreover, the adverse possession claims could not even have been considered in 1977. Thus, plaintiffs fail to make the "strong and unequivocal showing of relitigation of the same issue" necessary "to overcome the federal courts' proper disinclination to intermeddle in state court proceedings." De Cosme v. Sea Containers, Ltd., 874 F.2d 66, 68 (1st Cir.1989) (quoting Southern California Petroleum. Corp. v. Harper, 273 F.2d 715, 719 (5th Cir.1960)). Plaintiffs' res judicata claims are not necessarily without merit, yet "the proper forum for a complete investigation of the res judicata effects of the district court's judgment is the state court," which remains fully competent and able to resolve the issue. Staffer v. Bouchard Transp. Co., 878 F.2d 638, 643 (2d Cir.1989).
 
 III.
 
 18
 The district court did not abuse its discretion in refusing to grant an injunction against the state court proceeding, nor did it err in dismissing the complaint in this case for lack of jurisdiction under the Anti-Injunction Act.
 
 
 19
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 The Honorable James P. Churchill, Senior District Judge of the United States District Court for the Eastern District of Michigan, sitting by designation