James Jonathan **MAPP** et al.

v.

The **BOARD OF EDUCATION OF** the
**CITY OF CHATTANOOGA, TEN-
NESSEE**, et al.

**Civ. A. Nos. 3564 and 5954.**

United States District Court,
E. D. Tennessee, S. D.

Jan. 25, 1972.

Opinion Feb. 4, 1972.

Avon N. Williams, Jr., Nashville, Tenn., for plaintiffs.

Raymond B. Witt, Jr., and John T. Henniss, Chattanooga, Tenn., for Bd. of Ed. of the City of Chattanooga.

Eugene N. Collins, City Atty., Randall L. Nelson and Ellis K. Meacham, Chattanooga, Tenn., for City of Chattanooga, Tenn., including: Bd. of Ed. of the City of Chattanooga, Robert Kirk Walker, Mayor, Steve Conrad, Gene Roberts, John Franklin, and Pat Rose, Commissioners, and William Zachery, City Auditor.

Glenn T. McColpin, and Floyd E. Morgan, Chattanooga, Tenn., for John E. Grannan, Jr.

## MEMORANDUM AND ORDER

FRANK W. WILSON, Chief Judge.

This case is presently before the Court on a motion filed on behalf of the defendants reciting that upon January 14, 1972 an order was entered in a state court case entitled John E. Grannon, [sic] Jr. v. City of Chattanooga, Tennessee, et al, No. N–15967 in the Circuit Court for Hamilton County, Tennessee, wherein the City of Chattanooga and certain officials of the city were enjoined from making available any funds for transportation of school students "to achieve a racial balance within the Chattanooga public school system" from and after thirty days from the entry of the state court order. Interpreting the state court order and the stated intention of officials of the City of Chattanooga that they expect to comply with that order without appeal, as interfering with or forbidding the defendant from complying with the plan for establishing a unitary school system as required by the Equal Protection Clause of the United States Constitution and as heretofore approved by order entered in this cause, the defendants seek the instructions of this Court.

It is of course readily apparent what those instructions must be. A brief recitation of the history of this litigation will serve to render obvious what must be done. This case, seeking the desegregation of the public schools of the city of Chattanooga, Tennessee, has been in various stages of litigation since 1960. Extensive hearings have been held and orders entered, which orders have now been approved upon appeal upon three occasions. Hearings extending over a period of weeks were held upon the present phase of the case in the spring and summer of 1971. These hearings resulted in an order being entered instructing the defendants to submit a further plan for the desegregation of the Chattanooga city schools, such plan to be in accordance with the controlling appellate court decisions, including the

decision of the United States Supreme Court in the case of Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). In addition to these general instructions and by way of interpretation of these appellate court mandates, this Court gave the following directions to the Board:

Now in that connection, I read the *Swann* case as holding that the establishment of any exact racial balance in the schools is not constitutionally mandated. Likewise, the use of means to accomplish desegregation, such as, for example, bussing the students to accomplish an exact racial balance, is not constitutionally mandated. But these factors are matters which should be considered in every case. And, as I have said, the Court goes on to say that when it does appear that there are schools which do not have some reasonable balance in relationship to the total population of the school, the school board 'has the burden of showing that such school assignments are genuinely non-discriminatory.'

\*     \*     \*     \*     \*     \*

. . . A unitary school system as I understand it, is just simply a system in which no segregation exists by reason of any past action of a school official . . . or by reason of any present action of the school board or officials, or any lack of action on their part. To the extent that any segregation exists in the system today which is traceable to actions of the board at the time when they were operating a dual system, then they have an obligation to remove that segregation. To the extent that any segregation exists in the system as a result of present action or inaction on the part of the board, then they have an obligation to remove that segregation.

\*     \*     \*     \*     \*     \*

. . . A unitary school system is simply an attempt to visualize what the Chattanooga school system would have looked like today had there been no white children and had there been no black children, but only just children. . . .

With this model of a school system built and structured only to serve and educate children and not to educate black children and not to educate white children, but educate just children, we must seek to restructure our present schools as nearly as feasible and as nearly as possible along these lines, with zone lines being drawn and all other available means of desegregation being used to the extent necessary to achieve the model. When all present segregation that is the result of either past action of school authorities and school boards, including action that occurred when a dual school system was operated pursuant to law, and/or that which is the result of action or inaction on the part of the present school board, including the obligation of that Board to eliminate the results of previously state-imposed segregation, we will have achieved a unitary system, as I understand that term, and as it appears to be defined in the cases.

Pursuant to these instructions, the Board of Education submitted a proposed plan for further and final desegregation of the Chattanooga public schools, the plaintiffs having previously submitted their proposed plan. The respective plans were considered by the Court and an opinion was entered approving a substantial portion of the Board of Education's plan, including that portion of the plan relating to the transportation of students electing to transfer from a school in which they were of the majority race to a school in which they would be in the minority race, all as explicitly mandated by the unanimous decision of the United States Supreme Court in the *Swann* case, supra, and including that portion of the plan relating to the transportation of students where rezoning of elementary schools was deemed to render such transportation convenient or necessary. Neither "racial balance" nor crosstown bussing to accomplish "racial balance" was ordered or approved. The opinion of the Court upon these matters

was entered July 26, 1971. See Mapp v. Board of Education of the City of Chattanooga, Tennessee, 329 F.Supp. 1374 (E.D.Tenn.1971). An appeal is now. pending in the United States Court of Appeals for the Sixth Circuit with regard to that opinion.

No issue has heretofore been raised in this case regarding the legality of providing for transportation of students as a part of a plan for achieving a unitary school system. If issues exist in this regard they should be presented in this case. They may be presented in the United States Court of Appeals where issues in regard to this phase of the plan are now in contention. It is clear however that a Federal Court may not be ousted of jurisdiction nor may its jurisdiction be by-passed or circumvented when the case involves federal constitutional issues. See Thomason v. Cooper, 254 F.2d 808 (8th Cir. 1958).

All parties named as plaintiffs or as defendants in the state court litigation in the case of John E. Grannan, Jr. vs. the City of Chattanooga, Tennessee, et al, No. N–15967 in the Circuit Court for Hamilton County, Tennessee, including the attorneys for the plaintiff therein, must be immediately joined as parties-defendant to this litigation and they must be called upon forthwith to show cause why they should not be enjoined from complying with or seeking to enforce the order entered in that cause purporting to enjoin the use of public funds for the transportation of students pending the litigation of that issue in these proceedings.

This Court has at all times sought to limit the parties to this litigation to those essential to its litigation, leaving out of the litigation those public officials not immediately and directly responsible for the operation of the Chattanooga public schools. Accordingly, neither the members of the City Commission nor the United States Department of Health, Education and Welfare have been made parties to these proceedings. Rather the Court has sought to leave to those public officials who are directly responsible for the operation of the Chattanooga public schools the maximum authority and responsibility for the operation of those schools, subject only to the requirement that that operation be consistent with the United States Constitution as interpreted by the United States Supreme Court. It is with sincere regret that the Court must now add further parties-defendant to this litigation, including additional public officials of the City of Chattanooga. This Court is not permitted, however, either by its oath or by its conscience to ignore or to disregard the requirements of the United States Constitution, including the Equal Protection Clause of that Constitution. Neither is it permitted to substitute its personal views regarding matters of constitutional interpretation for the decisions of the United States Supreme Court in regard thereto. Neither can it permit others to do so in matters pertaining to this litigation.

The plaintiff will accordingly file forthwith a petition adding as parties-defendant to this cause all those who are named as parties-plaintiff or defendant in the aforesaid case of John E. Grannan, Jr. vs. The City of Chattanooga, Tennessee, et al., No. N–15967 in the Circuit Court for Hamilton County, Tennessee, including the attorneys for the plaintiff therein. An order will thereupon issue requiring that the said parties appear forthwith to show cause why a temporary restraining order should not issue enjoining them from compliance with or enforcement of the state court order pending further proceedings and further orders in this cause.

It is so ordered.

## OPINION

Upon July 26, 1971, this Court entered its opinion upon all matters then before the Court in this case. See Mapp v. Board of Education of the City of Chattanooga, Tennessee, 329 F.Supp. 1374. The order entered upon that opinion is now pending upon appeal. At the time that order was entered the following

matters were reserved for further consideration by this Court: (1) matters relating to the schedule for full implementation of that portion of the School Board plan relating to student assignments in elementary and junior high schools; (2) tentative approval only was given to the School Board plan for desegregation of the Chattanooga high schools other than Kirkman Technical High School, which was found to be a unitary school and to which final approval was given. There accordingly remain to consider matters relating to final approval of the plan for desegregation of the four general purpose high schools; and (3) matters relating to the plaintiffs' claim for recovery of attorney fees from the defendant School Board.

Reports, affidavits, and briefs have now been filed regarding the matters remaining for decision as summarized above. Upon December 14, 1971, the plaintiff filed a motion for further relief which substantially reasserts the foregoing matters.

In addition, a further issue was injected into the case by recent motions filed by each party seeking to enjoin a state court judgment alleged to impede or interfere with the desegregation plans heretofore approved in this case Thereupon an order was entered directing the joinder of additional parties as parties defendant to this case and ordering that the said additional parties should appear and show cause why they should not be enjoined from the enforcement of or compliance with a certain judgment entered in a state court and to which lawsuit they were each parties or counsel for parties.

Taking up first the matters just referred to, that is, the defendant's motion for instructions and the plaintiff's motion seeking to enjoin compliance with or enforcement of an order entered in the state court, reference is made to this Court's instructions and orders entered upon January 25 and 26, 1972. Pursuant to these instructions and orders of this Court, there have now been added as additional parties defendant to this law-suit all parties to that certain state court proceeding entitled "John E. Grannan, Jr. v. City of Chattanooga, Tennessee, et al," #N–15967 in the Circuit Court for Hamilton County, Tennessee, including the plaintiff, John E. Grannan, Jr., each of his counsel of record, and including the City of Chattanooga, its Mayor, each City Commissioner, and the City Auditor. Upon January 28, 1972, a hearing was held wherein the original parties were present or represented by counsel and wherein each new party defendant was present in person and by counsel except Commissioner Rose, who had sought and obtained permission to be excused but who was represented by counsel. The City of Chattanooga was represented by corporate counsel. One of the attorneys of record for the plaintiff Grannan in the state court proceedings, Ray Dodson, having disclaimed at the show cause hearing any interest in the state court judgment or proceedings, was dismissed as a party defendant to this case. The purpose of the hearing was to call upon the newly added parties defendant to show cause why a temporary injunction should not issue enjoining and restraining them from enforcement of or compliance with the order entered in the aforesaid case of John E. Grannan, Jr. v. City of Chattanooga. Upon the basis of the pleadings and the record made upon that hearing, the following matters appear undisputed.

Upon December 9, 1971, a lawsuit was filed in the Circuit Court for Hamilton County, Tennessee, in the aforesaid case of John E. Grannan, Jr. v. City of Chattanooga, et al. Upon January 18, 1972, a final judgment was entered in that case purporting to permanently enjoin the City of Chattanooga and its officials from using public funds "for the purpose of transporting pupils in order to achieve a racial balance within the Chattanooga Public School System." According to that final judgment a trial was held in the state court upon January 14, 1972, just 35 days after the filing of the original lawsuit. Reference is made to "Exhibit B" to the plaintiff's petition

for a full and true copy of the state court final judgment. The legal basis for the state court judgment, as cited on the face thereof, is (1) Section 49–2201 of the Tennessee Code Annotated; (2) Section 1232(a) of Title 20 of the United States Code, and (3) "sanity, reason, and the health and well being of the children."

At the time of the show cause hearing in this court the only counsel to speak in support of the validity of the state court order was counsel for the plaintiff therein. Counsel for the City of Chattanooga and for other city officials who were parties defendant in the state court proceedings, stated that he was of the opinion both prior to and after the entry of the state court order that the order was a wholly void and unconstitutional order. Although specifically invited by this Court to do so, no other party or legal counsel present at the hearing, including the Mayor of the City of Chattanooga who is himself an attorney, spoke in support of the validity of the state court order. It was further represented at the show cause hearing, however, that within a matter of days after entry of the state court judgment a public announcement was authorized and made on behalf of the City of Chattanooga and the other defendants in the state court proceedings that no appeal would be taken from the state court judgment and that the said defendants expected to fully comply therewith.

■ Upon the basis of the foregoing undisputed record, it is perfectly clear that the aforesaid state court judgment seeks to interfere with or impede the orders entered in this case and that the state court judgment is unconstitutional upon its face in that it is in direct conflict with the unanimous decisions of the United States Supreme Court written by Chief Justice Burger in the cases of Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554; McDaniel v. Barresi, 402 U.S. 39, 91 S.Ct. 1287, 28 L.Ed.2d 582; and North Carolina Board of Education .v. Swann, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586, all of which were entered upon April 20, 1971. It should be noted in passing that these decisions were entered more than six months prior to the filing of the lawsuit in the state court.

■ Although these decisions are sometimes referred to by persons not knowledgeable in the law as "mere precedents," all persons with either knowledge of or respect for the law are fully aware that these unanimous decisions of the United States Supreme Court are the *law* of the land, binding upon every person in the land, and every court in the land, including the state courts of Hamilton County, Tennessee and this Court. These matters are so clear as to render any contention to the contrary frivolous upon its face.

In the decision of the United States Supreme Court entered in the case of North Carolina Board of Education v. Swann, *supra*, the Court unanimously held that a state statute having the identical purpose as the Tennessee statute recited as the basis for the court order in Grannan v. City of Chattanooga was unconstitutional, saying:

"However, if a state-imposed limitation on a school authority's discretion operates to inhibit or obstruct the operation of a unitary school system or impede the disestablishment of a dual school system, it must fall; state policy must give way when it operates to hinder vindication of federal constitutional guarantees."

Not only does Section 1232(a) of Title 20, United States Code, cited in the state court judgment show on its face that it has no application to state and local officials in school desegregation cases, but the United States Supreme Court in a unanimous opinion written by Chief Justice Burger in the case of McDaniel v. Barresi, *supra*, clearly so stated in regard to an almost identical statute in the Civil Rights Act of 1964, saying:

"Nor is the board's plan barred by Title IV of the Civil Rights Act of 1964. The sections relied upon by the respondents [42 U.S.C. §§ 2000c(b),

2000c(6)] are directed only at federal officials and are designed simply to foreclose any interpretation of the Act as expanding the powers of federal officials to enforce the Equal Protection Clause. *Swann*, 402 U.S. at 15, [91 S.Ct. at 1276,] 28 L.Ed.2d at 567. Title IV clearly does not restrict state school authorities in the exercise of their discretionary powers to assign students within their school systems."

Finally, the contention that the use of public funds for student transportation is contrary to "sanity, reason, and health and well being of the children" is directly contrary to the decision of the United States Supreme Court in the case of Swann v. Charlotte-Mecklenburg Board of Education, *supra*, wherein the Court stated:

> "Bus transportation has been an integral part of the public education system for years, and was perhaps the single most important factor in the transition from the one-room schoolhouse to the consolidated school. Eighteen million of the nation's public school children, approximately 39%, were transported to their schools by bus in 1969–1970 in all parts of the country."

The City of Chattanooga has for years financed transportation of students, long prior to this desegregation lawsuit. Likewise, Hamilton County, Tennessee, schools have furnished transportation for children and is now doing so. It is obvious that the only transportation of students objected to in the state court order is that transportation which may further the removal of racial discrimination in the schools. When dual school systems were being operated, no contention was then made that transportation used to keep the races apart was contrary to "sanity, reason and health and well being of children." Counsel for the defendant Grannan himself, the only counsel to make any contention in support of the state court order, admitted that transportation of students to further municipal annexation is lawful and proper. To seek to argue that transpor-

tation of students in furtherance of a municipal annexation ordinance is lawful and valid but transportation of the same students in furtherance of the Equal Protection Clause of the United States Constitution is unlawful needs only to be stated to demonstrate its irrationality.

An order must accordingly enter enjoining all parties from either seeking to enforce or in any manner complying with the judgment entered in the case of John E. Grannan, Jr. v. City of Chattanooga, Tennessee, et al., #N–15967 in the Circuit Court of Hamilton County, Tennessee, the said judgment being void and unconstitutional on its face.

■ With regard to the injunction to be entered herein, there remains only to consider the issue of the taxation of costs as to this phase of the lawsuit and whether the legal expenses incurred by any party by reason of these proceedings should be taxed as a part of the costs and, if so, to whom. To advance contentions and to undertake proceedings which parties or their legal counsel know to be directly contrary to specific, clear, and controlling decisions of the United States Supreme Court and which are designed to delay or impede the proceedings or orders of this Court is an act of bad faith upon the part of those parties or their counsel who may so act, and, when established in the record, will be grounds for awarding all costs in such proceedings against parties or their attorneys so found to have acted in bad faith, such costs to include the legal expenses incurred on behalf of all parties not found to have acted in bad faith. The case will remain before this Court only for resolution of any issues regarding costs. All other matters in regard to this phase of the lawsuit, if any, must be taken up in the United States Court of Appeals where the case is now pending on appeal.

■ Turning to the matters heretofore reserved following entry of the Court's opinion upon July 26, 1971, and as summarized at the beginning of this memorandum, it appears that full implementation of the student assignment

plans heretofore approved has not been accomplished as yet in certain elementary and junior high schools. It further appears that the delay in this regard has been occasioned by the unavailability of funds "in the prompt and orderly process of local governmental affairs," as directed by the Court, the delay in this regard having been occasioned in very substantial part by the uncertainties regarding various programs of federal aid to education. Accordingly, the provisions for full implementation of the plan for student desegregation as contained in paragraph 4 of the order entered upon August 5, 1971, will continue in effect with the further provision that full implementation will be accomplished not later than the fall term of school in 1972, subject, of course, to the rights of the parties to present in the appeal now pending any matters in regard thereto.

■ Tentative approval only having heretofore been given to the School Board plan for desegregation of the Chattanooga high schools other than Kirkman Technical High School (to which final approval has been given). Further consideration must be given to this phase of the plan. At the time that the Court gave its tentative approval to the high school desegregation plan, the Court desired additional information from the Board of Education as to whether three, rather than four, general purpose high schools would be feasible or desirable in Chattanooga. It now appears, and in this both parties are in agreement, that three general purpose high schools rather than four is not feasible or desirable, at least for the present school year. Having resolved this matter to the satisfaction of the Court, the defendant Board of Education will accordingly submit a further report on or before June 15, 1972, in which they either demonstrate that any racial imbalance remaining in the four general purpose high schools is not the result of "present or past discriminatory action on their part" Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. at

26, 91 S.Ct. at 1281, 28 L.Ed.2d 554 at 572, or otherwise, and to the extent that the Board is unable to demonstrate that such racial imbalance which remains is not the result of past or present discriminatory action, they should submit a further plan for removal of all such remaining racial discrimination, the further plan likewise to be submitted on or before June 15, 1972.

■ Turning finally to the motion for the allowance of attorney fees for all legal services performed on behalf of the plaintiffs since the filing of this lawsuit, the Court is of the opinion that the motion should be denied. In the absence of a showing of bad faith on the part of the defendants, the Court is of the opinion that the allowance of attorney fees would not be proper. This lawsuit has been in an area where the law has been evolving, and the Court cannot say that the defendants have acted in bad faith in failing always to perceive or anticipate that development of the law. For example, in all of its orders entered prior to the decision of the United States Supreme Court in the case of Green v. School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), this Court was itself of the opinion that genuine freedom of choice on the part of students in school attendance was compliance with the Equal Protection Clause of the Constitution. While the Board has vigorously contested the plaintiff's contentions at every stage of this lawsuit, it further appears to the Court that when factual and legal issues have been resolved, the Board has at all times complied or attempted to comply in good faith with the orders and directions of the Court. Accordingly, it has never been necessary for this Court to direct that outside persons or agencies, such as the United States Department of Justice or the United States Department of Health, Education, and Welfare, enter into the lawsuit in aid of the development of a lawful plan of desegregation or in aid of enforcement. As recently as

in its opinion entered upon July 26, 1971, the Court had this to say:

"The wisdom and appropriateness of this procedure (i.e., looking to the School Board for the development of a desegregation plan) is further enhanced in this case by the apparent good faith efforts of the Chattanooga school authorities and the School Board to come forward with a plan that accords with the instructions of the Court and its order of May 19, 1971, and with the appellate guidelines therein cited."

Under these circumstances the Court is of the opinion that an award should not be made taxing the defendant Board of Education with the plaintiff's attorney fees.

In conclusion, it appears appropriate for the Court to once again state in simple and basic terms the things it has and has not done in this case.

Acting pursuant to the Equal Protection Clause of the United States Constitution and the unanimous decision of the United States Supreme Court in the case of Swann v. Charlotte-Mecklenburg Board of Education, this Court has ordered the removal of all vestiges of racial discrimination in the Chattanooga City Schools where such discrimination was shown to have been created by past or present actions of the state or local government. Nothing more nor nothing less than this has been ordered. Where school zone lines were shown to have been deliberately drawn upon racial lines, either as a carryover from the days when a dual system of schools was operated for white and black children, or otherwise, the redrawing of school zone lines was ordered. In some instances this was done on the basis of pairing or grouping schools. Where transportation of students was shown to be necessary in getting children to the school to which they were zoned, such transportation was approved. No child has ever been ordered by this Court to use school provided transportation. Each child has been ordered to attend the school to which he or she is zoned, a requirement

that has been followed since the beginning of public education in this City and in this Nation. When persons attempted to interfere with or prevent the removal of racial discrimination in the Chattanooga Public Schools by means of an illegal and unconstitutional state court order, enforcement of that order was enjoined.

An order will enter in accordance with this opinion.