**LAMB ENTERPRISES, INC., et al.,
Plaintiffs-Appellees,**

**v.**

**Judge George N. KIROFF et al.,
Defendants-Appellants.**

**Nos. 75–2450–54.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1976.

Decided Jan. 31, 1977.

**1054**

T. Scott Johnston, Hayward, Cooper, Straub, Walinski, Cramer & Co., L.P.A., Richard S. Walinski, Toledo, Ohio, for defendants-appellants.

Robert Gosline, Shumaker, Loop & Kendrick, Toledo, Ohio, for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, and McCREE and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

The Court of Common Pleas of Lucas County, Ohio, dismissed a suit filed by Russell Morton Brown to recover attorney's fees from Lamb Enterprises, Inc. (Lamb). In *Brown v. Lamb,* 36 Ohio St.2d 8, 302 N.E.2d 578 (1973), the Supreme Court of Ohio reversed and remanded the case to the State trial court for further proceedings. In its opinion in the present case, reported at 399 F.Supp. 409 (N.D.Ohio 1975), the District Court enjoined the State trial judge from proceeding with the disposition of the case as directed by the Supreme Court of Ohio. We reverse on the ground of unwarranted interference by the United States District Court in litigation over which State courts have jurisdiction. We hold that the District Court should have exercised equitable restraint and left this litigation for resolution in the State Courts of Ohio. *Huff-*

*man v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Louisville Area Interfaith Committee v. Nottingham Liquors,* 542 F.2d 652 (6th Cir. 1976).

I.

The suit was filed in the State court in 1959 to recover compensation claimed by Brown for legal services rendered in connection with proceedings before the Federal Communications Commission for the renewal of a license to operate a television station in Erie, Pennsylvania.

While the Ohio action was pending in the Court of Common Pleas, Brown filed a second action for the same attorney's fees and against the same defendants in the United States District Court for the District of Columbia. The District of Columbia action was filed after it ostensibly was barred by the three-year statute of limitations established by District of Columbia Code § 12–301(7), but Brown pleaded facts that he claimed avoided the operation of the statute. Jurisdiction was established in the District of Columbia and on November 1, 1967, a jury returned a verdict for Brown for $400,000. On December 22, 1967, District Judge Matthews of the federal district court granted a defense motion for judgment n. o. v. on the ground that the District of Columbia action was commenced after the expiration of the District of Columbia's statute of limitations, and Brown had not produced evidence of "a new or continuing contract [for attorney's fees] . . . " to take the case out of the statute of limitations. Brown appealed the District Court judgment n. o. v. The Court of Appeals for the District of Columbia affirmed. *Brown v. Lamb,* 134 U.S.App.D.C. 314, 414 F.2d 1210 (1969). The Supreme Court denied certiorari. 397 U.S. 907, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970).

While the District of Columbia action was proceeding through the federal courts, the Ohio Common Pleas Court, sua sponte, kept the Ohio action in an inactive status. Ap-

·parently through inadvertence, however, the Ohio case was dismissed for want of prosecution on March 24, 1969. Brown, already unsuccessful in the District of Columbia litigation, acted to have the erroneous dismissal remedied, and on October 5, 1970, the case was reinstated. Lamb then moved the Common Pleas Court for reconsideration of the reinstatement. On March 6, 1972, a visiting judge ruled that the case should not have been reinstated and vacated the order of reinstatement, stating as grounds both want of prosecution and that the District of Columbia judgment n. o. v. barred the Ohio action on principles of *res judicata.* Brown appealed this last order of dismissal. The Ohio Court of Appeals, without ruling on the *res judicata* question, affirmed the trial court's judgment of dismissal. The Supreme Court of Ohio, in a per curiam opinion reported at 36 Ohio St.2d 8, 302 N.E.2d 578 (1973), reversed the Court of Appeals and remanded the case to the Common Pleas Court for further proceedings.

On remand, Lamb filed an "Amended Motion to Dismiss," again insisting that the Ohio Common Pleas action had been abandoned and that the defendants faced "double vexation" in the Ohio courts. This motion was denied by Judge George N. Kiroff of the Common Pleas Court of Lucas County, Ohio.[1] Judge Kiroff thereafter granted leave for Brown to amend his complaint, to add new parties and to proceed with discovery. Judge Kiroff indicated that the Ohio action would be readied for trial.

On September 13, 1974, Lamb and other defendants in the state court initiated in the District Court the action from which this appeal arises. Invoking federal court jurisdiction pursuant to 28 U.S.C. § 1343(3), and. alleging a cause of action for deprivation of civil rights under 42 U.S.C. § 1983, Lamb asked the District Court to enjoin the reinstated proceedings in the Ohio state court on the ground that any further prosecution of the state court action would violate the full faith and credit due the District of Columbia judgment.

The District Court, citing *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943), determined that the full faith and credit clause of the U.S. Constitution and its implementing statute, 28 U.S.C. § 1738,[2] created rights which may be asserted via a civil rights action under § 1983. The Court found that Lamb had presented an appropriate case for federal court injunction of purely civil state court proceedings, and enjoined further proceedings in the Ohio suit so as to give Lamb the protection of the full faith and credit clause. Judge Kiroff, Brown and three other defendants appeal the order of the District Court permanently enjoining them from continuing with the reinstated action for attorney's fees in the Ohio Court of Common Pleas.

## II.

Appellants' principal contention on this appeal is that under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and cases since which purport to extend the analysis of *Younger* into the context of federal court injunction of state *civil* pro-. ceedings, the District Court injunction was an unwarranted exercise of federal supervision over the state courts of Ohio. Specifically, appellants say that the District Court correctly determined to apply *Younger* analysis to the case at hand, but incorrectly stated the test set down by the Supreme Court in *Younger* and thus failed to consider whether the state court action had been initiated in bad faith or with intent to harass as it must be, according to appellants, before a federal court injunction would be appropriate.

1. Judge Kiroff, and other officials of the Court of Common Pleas of Lucas County, Ohio, are named defendants in the present action.

2. 28 U.S.C. § 1738 reads in part:

 Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Appellees argue in the alternative that *Younger-Huffman*[3] analysis should not apply, but that "extraordinary circumstances, bad faith and harassment" are present sufficient to satisfy *Younger-Huffman* and to make this a proper case for federal court injunction. The District Court undertook to apply *Younger-Huffman* but reached the alternative conclusion urged by appellees— that this is the exceptional situation wherein federal intervention is appropriate. We agree, in line with *Inter-Faith Committee v. Nottingham, supra,* 542 F.2d 652 (6th Cir. 1976), and the decisions of this and other circuits cited therein, that *Younger-Huffman* analysis is the correct approach to determining whether the injunction should have issued in this case. We hold that the District Court erred, however, in its characterization and application of the *Younger-Huffman* test.

### III.

This circuit has joined the growing number of circuits that have looked to *Younger* as a guide for determining when a federal court may properly enjoin state civil proceedings. *See Inter-Faith Committee v. Nottingham, supra,* 542 F.2d 652 (6th Cir. 1976), and Sixth Circuit cases cited therein. To date, the Supreme Court has sanctioned this development in the context of a "quasi-criminal" civil nuisance proceeding, but the court has made ". . . no general pronouncements upon the applicability of *Younger* to all civil litigation." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975). In support of the decision to apply *Younger* to appraise the propriety of federal court injunction of state civil proceedings, this court stated in *Inter-Faith, supra* :

Although the Supreme Court has left open the applicability of *Younger-Huffman* doctrine to general civil litigation, *Huffman, supra,* 95 S.Ct. at 1208, 1209,

bolstering us in our application of *Younger-Huffman* doctrine to bar federal court interference with pending state court civil proceedings are this court's oft-expressed reluctance to interfere in state court proceedings, *see, e. g., Littleton v. Fisher,* 530 F.2d 691, 693 (6th Cir. 1976), *King v. Jones,* 450 F.2d 478 (6th Cir. 1971), *vacated as moot,* 405 U.S. 911, 92 S.Ct. 956, 30 L.Ed.2d 780 (1972), *Appalachian Volunteers, Inc. v. Clark,* 432 F.2d 530 (6th Cir. 1970), *cert. denied,* 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971), and other courts' application of *Younger-Huffman* doctrine to bar interference in state court civil proceedings.

542 F.2d 654 (6th Cir. 1976).

*Inter-Faith,* decided by this court after the filing of briefs in the instant case, is dispositive of the question of whether the strict *Younger-Huffman* requirements for federal court injunctive relief should be applied to the facts here presented. In *Inter-Faith,* the state proceeding against which a federal court injunction was sought was a purely civil action for an order restraining mass picketing and marching in a labor dispute. This court, speaking through Judge Peck, stated that federal courts are reluctant to interfere with state proceedings and will exercise "equitable restraint" when called on to enjoin state civil action where the parties have adequate remedy for their constitutional grievances in the state courts.

The same principles of federalism, equity and comity which underlie federal court reluctance to interfere in state criminal proceedings apply with substantial force when the federal court is asked to enjoin state civil proceedings. Although we recognize that the states may have a particularly acute interest in the unencumbered execution of their criminal laws,[4] this court finds that *Younger-Huffman* adequately embod-

---

3. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), discussed *infra.*

4. *See* Stewart, J. concurring in *Younger v. Harris,* 401 U.S. 37, 55 n. 2, 91 S.Ct. 746, 27

L.Ed.2d 669 (1971). *See also Huffman, supra,* 420 U.S. at 603–05, 95 S.Ct. 1200.

ies the principle of equitable restraint in a test which is appropriately applied to assess the wisdom of federal court injunction of state civil, as well as of state criminal proceedings.

The ruling of this court in *Inter-Faith* is in accord with the overwhelming weight of authority in other circuits. *See, e. g., Ahrensfeld v. Stephens,* 528 F.2d 193, 197 (7th Cir. 1975); *Anonymous v. Association of the Bar of the City of New York,* 515 F.2d 427, 432–34 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Goodrich v. Supreme Court of the State of South Dakota,* 511 F.2d 316, 317 (8th Cir. 1975); *Cleaver v. Wilcox,* 499 F.2d 940, 943 (9th Cir. 1974); *Douglas-Guardian Warehouse Corp. v. Posey,* 486 F.2d 739, 742–43 (10th Cir. 1973); *Roy v. Jones, Chief Justice,* 484 F.2d 96, 98 (3rd Cir. 1973); *American Radio Association v. Mobile Steamship Association,* 483 F.2d 1, 6–7 (5th Cir. 1973); *Duke v. State of Texas,* 477 F.2d 244, 251–52 (5th Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); *Lynch v. Snepp,* 472 F.2d 769, 771–73 (4th Cir. 1973), *cert. denied,* 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974); *Cousins v. Wigoda,* 463 F.2d 603, 606 (7th Cir. 1972), *stay denied,* 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (1972).

Appellees insist that the strict standards of *Younger-Huffman* should not be applied because neither *Younger* nor *Huffman* dealt with a fully-litigated state court judgment or conviction. This argument misconceives the nature of *Younger-Huffman* analysis. It is the form of relief requested (injunction of pending state court proceedings), not the particular right being asserted (here, full faith and credit for a "final judgment") which triggers the *Younger-Huffman* inquiry at the threshold. The fact that appellees may have a "final judgment" needing federal court protection does not alter the holding of *Inter-Faith* that the *Younger-Huffman* criteria must be present before a United States District Court in this circuit may properly intervene by injunction in state civil proceedings.

IV.

In *Huffman,* Justice Rehnquist reviewed the holding of *Younger* in these terms:

[In *Younger*] [w]e reaffirmed the requirement of *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 that extraordinary circumstances must be present to justify federal injunctive relief against state criminal prosecutions. Echoing *Fenner,* we stated that a movant must show not merely the "irreparable injury" which is a normal prerequisite for an injunction, but also must show that the injury would be " 'great and immediate.' " 401 U.S., at 46, 91 S.Ct. 746. The opinion also suggested that only in extraordinary situations could the necessary injury be shown if the prosecution was conducted in good faith and without an intent to harass. *Id.,* at 54, 91 S.Ct. 746. 420 U.S. at 601, 95 S.Ct. at 1207.

The District Court in the case at hand made no specific findings on the question of "good faith" or the intentions of the plaintiffs in the Ohio state court action. As indicated in the foregoing quotation from *Huffman,* in the absence of a showing of bad faith or intent to harass on the part of the state court plaintiff, the party seeking federal court injunctive intervention bears a great burden to prove the quality of injury necessary under *Younger.* Normally, it would be incumbent on the federal trial court applying *Younger-Huffman* to make a finding on the issue of good or bad faith and harassment. Here, however, the failure of the District Court to address the issue of good or bad faith does not require this court to remand for reconsideration, because by no construction of the record have appellees established the kind of "great and immediate" injury contemplated by *Younger-Huffman.*

The District Court concluded that appellees' constitutional right to full faith and credit was "in jeopardy of immediate loss by the very act of continuing the state proceeding" in Ohio. As the court explained, it is the essence of full faith and credit that appellees avoid having to "reliti-

**1058**

gate" the District of Columbia action in the courts of Ohio.

■ It cannot be said, on the facts of this case, that appellees are in "great and immediate" danger of losing their full faith and credit rights. It is elementary that in order for a litigant to invoke judicial protection for full faith and credit rights an appearance must be made at some point in a court to raise full faith and credit as a defense to further proceedings. As yet, there has been no judicial resolution (other than by the District Court in the present case) of the question whether the District of Columbia dismissal on statute of limitations grounds precludes the Ohio court action on principles of full faith and credit or *res judicata*. It appears to this court that appellees' real objection is not that the Ohio proceedings deny the protection of the full faith and credit clause, but that it is a violation of full faith and credit for appellees to be required to appear in the Ohio courts and raise as a defense the full faith and credit for the District of Columbia dismissal.

■ The availability of adequate state court remedies is a critical factor in determining whether extraordinary injunctive relief should issue from the federal court. *See, e. g., Inter-Faith, supra,* 542 F.2d at 653–54; *O'Neill v. Battisti,* 472 F.2d 789, 791 (6th Cir. 1972), *cert. denied sub nom., Heitzler v. O'Neill, Chief Justice,* 411 U.S. 964, 93 S.Ct. 2142, 36 L.Ed.2d 685 (1973); *King v. Jones,* 450 F.2d 478, 479–80 (6th Cir. 1971), *vacated as moot,* 405 U.S. 911, 92 S.Ct. 956, 30 L.Ed.2d 780 (1972); *Scott v. Hill,* 449 F.2d 634, 640–41 (6th Cir. 1971); *Appalachian Volunteers, Inc. v. Clark,* 432 F.2d 530, 537 (6th Cir. 1970), *Cert. denied,*

401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971); *Coogan v. Cincinnati Bar Association,* 431 F.2d 1209, 1211 (6th Cir. 1970). The Supreme Court, in *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), stated the general rule:

> Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court. 398 U.S. at 287, 90 S.Ct. at 1743.

■ An adequate remedy at law exists in the state courts of Ohio for the appellees in this case.[5] The action pending in the state court is an action for money damages only. No preliminary or permanent equitable relief is demanded. Should the appellees be wronged by the state trial court's ruling on the appellees' full faith and credit claim, appeal would lie through the State appellate courts. Ohio Const. Art. IV, § 3 (Court of Appeals); Ohio Const. Art. IV, § 2 (Supreme Court of Ohio). Review of the full faith and credit claim may then be obtained in the Supreme Court of the United States. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Angel v. Bullington,* 330 U.S. 183, 189–90, 67 S.Ct. 657, 91 L.Ed. 832 (1947). Should a verdict be entered against them by the Court of Common Pleas, the appellees may obtain a stay of the entire judgment pending appellate court review. Ohio Rules of Civil Procedure, 62(B).[6]

■ It is the essence of the *Younger-Huffman* barrier to federal court intervention that state courts be free to dispose of

---

5. We are not informed of the current procedural posture of the Ohio Common Pleas Court action, but in light of the District Court's injunction, and the fact that no party has indicated to the contrary on this appeal, we are confident that appellees still have opportunity under the Ohio Rules of Civil Procedure to raise their defenses if they wish to do so. In any event, it was appellees' choice to proceed in the District Court, rather than raise their full faith and credit claim in the Ohio state courts, and they may not avoid the standards of

*Younger* by failing to comply with the rules of procedure under Ohio law. *See Huffman, supra,* 420 U.S. at 611, n. 22, 95 S.Ct. 1200.

6. We express no view on the merits of appellees' full faith and credit claim. This is for the courts of Ohio to determine in the first instance. Similarly, the question raised on this appeal regarding the effect to be given the decision of the Supreme Court of Ohio in *Brown v. Lamb,* 36 Ohio St.2d 8, 302 N.E.2d 578 (1973), need not be reached by this court.

constitutional issues which arise in civil litigation over which they have jurisdiction. *Huffman, supra,* 420 U.S. at 609, 95 S.Ct. 1200, *Inter-Faith, supra,* at 654. The District Court's analysis runs counter to this principle by authorizing the substitution of a federal forum for the state forum in every case where full faith and credit is available to a party as a defense in pending state court proceedings. By the reasoning of the District Court, the mere necessity that a litigant be required to raise full faith and credit as a defense in state court litigation would be a deprivation of the right to full faith and credit sufficient to give rise to a cause of action for injunctive relief in federal court under § 1983. Under this theory the party bringing the § 1983 action would have a right to do what appellees did in the present case—litigate in the federal court whether he in fact has a judgment entitled to full faith and credit protection. Federal injunction of the pending state proceedings would not avoid litigation of this question; it simply would shift the forum from a state to a federal court.

There is not the slightest reason for this court to doubt the ability or willingness of the state judges of Ohio to determine the *res judicata* or full faith and credit effect due the District of Columbia proceedings between the parties herein. In *Robb v. Connally,* 111 U.S. 624, 637, 4 S.Ct. 544, 550, 28 L.Ed. 542 (1883), the Supreme Court, speaking through Mr. Justice John Marshall Harlan, said:

> Upon the State courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the State courts are required to take an oath to support that Constitution, and they are bound by it, and the laws of the United States made in pursuance thereof, and all

treaties made under their authority, as the supreme law of the land, "anything in the Constitution or laws of any State to the contrary notwithstanding." If they fail therein, and withhold or deny rights, privileges, or immunities secured by the Constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the State in which the question could be decided to this court for final and conclusive determination.

There is a hint of apprehension in appellees' brief that they might not receive a warm reception in the Ohio Court of Common Pleas.[7] Presented with the contention that federal intervention was necessary because appeal through the state Courts might be doomed to failure, the Supreme Court in *Huffman* had this to say:

> [W]e are of the opinion that the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious. Appellee obviously believes itself possessed of a viable federal claim, else it would not so assiduously seek to litigate in the District Court. Yet, Art. VI of the United States Constitution declares that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties. Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do. The District Court should not have entertained this action, seeking pre-appeal interference with a state judicial proceeding, unless appellee established that early intervention was justified under one of the exceptions recognized in *Younger.* (Footnote omitted.)

*Huffman, supra,* 420 U.S. at 610–11, 95 S.Ct. at 1211.

As we noted in *Inter-Faith, supra* :

---

7. We doubt any basis for this apprehension. This court is confident that appellees can and will be accorded a fair trial on the merits of their case in the Court of Common Pleas of Lucas County, Ohio.

Interference in state civil proceedings like interference in state criminal or quasi-criminal proceedings, would preclude state courts "the opportunity to resolve federal issues arising in [state] courts," *Huffman, supra,* 95 S.Ct. at 1211, and would ". . . be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505, 516 (1974). See *Cicero v. Olgiati,* 410 F.Supp. 1080, 1089–1090 (S.D.N.Y.1976). Such interference would seem exactly counter to the firmly held position of this court in regard to state courts generally and in regard to the courts of the states of this circuit particularly. 542 F.2d 654 (6th Cir. 1976).

## V.

Even if this were an appropriate case for an injunction to restrain Russell M. Brown from proceeding with his litigation in the State courts of Ohio, it was error for the District Court to issue an injunction against State judicial officers in the absence of a compelling reason to do so. *Compare O'Neill v. Battisti, supra,* 472 F.2d at 791.

The injunction was directed against all five named defendants. The first four were: the Honorable George N. Kiroff, individually and as Judge of the Common Pleas Court of Lucas County, Ohio; the Honorable Reno R. Riley, Jr., presiding judge of that court; Robert Kopf, individually and as Clerk of the court; and Jack Wagner, individually and as Lucas County Court Administrator.

■ Russell M. Brown, the plaintiff in the State court litigation, was the fifth defendant named in the complaint. If any injunction was necessary, it should have been issued against Brown, the litigant, and not against the State trial judge, the presiding judge, and court personnel. It was a violation of fundamental principles of State-federal relations for a federal judge to enjoin two State judges and their court

**8.** See also opinion of three-judge District Court in *Hernandez v. Danaher,* 405 F.Supp. 757

personnel, when an injunction against the litigant would have accomplished the same purpose.

## VI.

We also conclude that the District Court erred in enjoining Brown, the plaintiff in the Court of Common Pleas, from proceeding with his litigation in that court.

The District Court held that the present case falls within the "relitigation exception" to the federal anti-injunction statute, 28 U.S.C. § 2283, which provides as follows:

§ 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. June 25, 1948, c. 646, 62 Stat. 968.

■ We recognize that a federal court may enjoin proceedings in a State court "where necessary in aid of its jurisdiction or to protect or effectuate its judgments." See e. g., *Mapp v. Board of Education of the City of Chattanooga,* 341 F.Supp. 193 (E.D.Tenn.1972), aff'd, 477 F.2d 851 (6th Cir.), *cert. denied,* 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973); *International Association of Machinists and Aerospace Workers v. Nix,* 512 F.2d 125 (5th Cir. 1975).[8]

■ The right of the United States District Court to enjoin proceedings in a state court is based upon principles of equity deeply rooted in our system of jurisprudence. In Pomeroy's Equity Jurisprudence (5th Ed.1941), Vol. 1, § 253 at 503, this rule of equity is stated as follows:

[T]he court will interfere and restrain the defendant's further prosecution of successive actions at law, and will thus establish and quiet the plaintiff's right, when all the questions of law and fact involved in these actions have already been fully determined in the plaintiff's

(N.D.Ill.1975), *probable jurisdiction noted,* 426 U.S. 918, 96 S.Ct. 2622, 49 L.Ed.2d 374.

favor by some former judicial proceeding between the same parties.

 No basis for equitable relief, justifying an injunction against further proceedings in the State court, is established on the record in the present case. As set forth in Part IV of this opinion, there is no finding by the District Court of bad faith. Further, appellees are not subjected to harassment or irreparable injury by having to raise their defenses in the Ohio court. We reemphasize that the Supreme Court of Ohio has remanded the case to the State trial court for further proceedings. No reason is shown why the appellees cannot and will not be accorded a fair trial on the merits of their case in the Court of Common Pleas of Lucas County, Ohio, where the full faith and credit, res judicata and collateral estoppel defenses presumably remain available to them.

 Further, on the present state of the record, it is not demonstrated conclusively that, as stated by *Pomeroy, supra* : "All the questions of law and fact . . . have already been determined . . . by some former judicial proceeding between the same parties." As stated by Judge Gewin in *International Association of Machinists & Aerospace Workers v. Nix, supra,* 512 F.2d at 129–30:

> In view of the clear considerations of federalism supporting the Anti-Injunction Act, federal courts must proceed with caution in enforcing injunctions against state court proceedings. See *American Radio Assoc. v. Mobile Steamship Assoc., Inc.,* 483 F.2d 1 (5th Cir. 1973). The purpose of § 2283 is to "avoid unseemly conflict between the state and the federal courts." *NLRB v. Nash-Finch Co.,* 404 U.S. 138, 146, 92 S.Ct. 373, 378, 30 L.Ed.2d 328, 335 (1971). See also *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Oklahoma Packing Co. v. Gas Co.,* 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537 (1940); *Signal Properties, Inc. v. Farha,* 482 F.2d 1136 (5th Cir. 1973); *Vernitron Corp. v. Benjamin,* 440 F.2d 105 (2d Cir. 1971); *Euge v. Smith,* 418 F.2d 1296 (8th Cir. 1969)

(Blackmun, J.): The Act does not embody a mere "principle of comity" but rather mandates an express and unequivocal limitation on the power of federal courts. *Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Amalgamated Clothing Workers v. Richman Bros.,* 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955). Furthermore, the sensitive nature of federal interference with state court proceedings requires that the statute be strictly construed. *Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers, supra; Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); *Signal Properties, Inc. v. Farha, supra.* Cf. *Southern California Petroleum Corp. v. Harper,* 273 F.2d 715 (5th Cir. 1960).

\* \* \* \* \* \*

In order to affirm the district court's injunction, we must determine that it falls within one of the three Congressional exceptions to the Act. *Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers, supra; Amalgamated Clothing Workers v. Richman Bros., supra; Tampa Phosphate R. R. Co. v. Seaboard Coast Line R. R. Co.* [418 F.2d 387 (5th Cir. 1969)] *supra.* The injunction, in other words, must be "expressly authorized by Act of Congress," "necessary in aid of [the district court's] jurisdiction," or [necessary] "to protect or effectuate [the district court's] judgments."

\* \* \* \* \* \*

A consistent theme of our opinions is that federal courts may enjoin the relitigation in state court of issues that federal courts have *fully and finally adjudicated.* (Footnotes omitted, emphasis supplied.)

In the present case there is an unresolved question as to whether there has been a full and final adjudication of all the questions of law and fact in the District of Columbia litigation. The decision of the Court of Appeals for the District of Columbia was that Brown's suit in that jurisdiction was

barred by the three year District of Columbia statute of limitations. *Brown v. Lamb, supra,* 134 U.S.App.D.C. 314, 414 F.2d 1210 (1969). The question of whether the District of Columbia decision forecloses the right of Brown to proceed with his litigation in the Ohio courts is an issue to be decided by the State courts.

The posture of the present case is unusual. A civil rights statute, 42 U.S.C. § 1983, is invoked as a vehicle to attack the jurisdiction of the Ohio Court of Common Pleas to proceed with the trial of litigation in obedience to the mandate of the Supreme Court of Ohio.

In *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Supreme Court held that § 1983 is an exception to the federal anti-injunction statute. However, the Court was careful to emphasize:

> In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] and its companion cases. They are principles that have been emphasized by this Court many times in the past. *Fenner v. Boykin,* 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927]; *Spielman Motor Sales Co. v. Dodge,* 295 U.S. 89 [55 S.Ct. 678, 79 L.Ed. 1322]; *Beal v. Missouri Pac. R. Co.,* 312 U.S. 45 [61 S.Ct. 418, 85 L.Ed. 577]; *Watson v. Buck,* 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; *Williams v. Miller,* 317 U.S. 599 [63 S.Ct. 258, 87 L.Ed. 489]; *Douglas v. City of Jeannette,* 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324]; *Stefanelli v. Minard,* 342 U.S. 117 [72 S.Ct. 118, 96 L.Ed. 138]; *Cameron v. Johnson,* 390 U.S. 611 [88 S.Ct. 1335, 20 L.Ed.2d 182]. Today we decide only that the District Court in this case was in error in holding that, because of the anti-injunction statute, it was absolutely without power in this § 1983 action to enjoin a proceeding pending in a state court under any circumstances whatsoever. 407 U.S. at 243, 92 S.Ct. at 2162.

We hold that the peculiar posture of this litigation takes the case out of the class of proceedings traditionally dealt with under the "relitigation exception" to § 2283. *See, United States v. Ford Motor Company,* 522 F.2d 962 (6th Cir. 1975). We do not reach the question of whether the principles of *Younger-Huffman* should be applied in all situations involving § 2283 and the "relitigation exception" thereto.

The District Court erred in its determination that appellees faced "great and immediate" danger as a consequence of having to submit their full faith and credit defense to the Ohio state courts. *Younger-Huffman* counsels the exercise of great restraint when a litigant seeks federal court intervention in state court proceedings which themselves provide a ready forum for vindication of the rights at issue. We hold that appellees have not presented a proper case for federal court injunction.

This is not a case in which the District Court should retain jurisdiction pending a decision by the Ohio courts. The United States District Court and the United States Court of Appeals do not sit in review of the decisions of State courts. *See Coogan v. Cincinnati Bar Association, supra,* 431 F.2d 1209.

Nor is this a case where the doctrine of abstention requires retention of jurisdiction by the District Court. In *American Civil Liberties Union v. Bozardt,* 539 F.2d 340, 342 (4th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976), the Fourth Circuit said:

> Abstention is generally held to be appropriate in cases in which both state and federal questions arise, and it is recognized that an action pending in state court will likely resolve state law questions which are dispositive of the federal claim. *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). However, the *Younger* bar to federal intervention involves

different considerations; it is recognized that when both state and federal questions are properly presented before a state court in pending state criminal proceedings, *see Younger, supra,* or in certain pending state civil proceedings, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), principles of comity and federalism require that the federal courts not be permitted to interfere in the ongoing state proceedings. The underlying consideration of the *Younger* rule is the recognition that any federal claim properly asserted in and rejected by the state court is subject to review by the United States Supreme Court. 420 U.S. at 605, 95 S.Ct. 1200. Since the federal claim will eventually be subject to consideration by the Supreme Court, abstention appears to have no application to cases in which *Younger* bars relief. In this regard, the Supreme Court has stated that "[u]nlike those situations where a federal court merely abstains from decision on federal questions until the resolution of underlying or related state law issues . . . *Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).

The District Court's order of permanent injunction is vacated and its judgment reversed, but without prejudice to any rights the parties may have to proceed in the state courts of Ohio. The costs of this appeal are taxed against Lamb Enterprises, Inc.

McCREE, Circuit Judge (concurring).

I concur in the decision of the court, which requires the permanent injunction to be vacated.

I agree with Part V of the majority opinion, because the issuance of an injunction directed personally against two state court judges and two state court employees was, on the facts of this case, an improper interference in the operations of the state courts. *See Smith v. Martin,* 542 F.2d 688 (6th Cir. 1976). The complaint against them should have been dismissed.

I do not believe, however, that the allegations in the complaint set forth a violation by the remaining defendant, Russell Brown, of 28 U.S.C. § 1738 and of the Full Faith and Credit Clause of the Constitution, Art. IV, § 1, cognizable under 42 U.S.C. § 1983. A private party like Brown who initiates in a state court an action that may be subject to the defense of res judicata does not thereby violate the Full Faith and Credit Clause, which imposes a duty only upon the state. Because we have determined that the defendants who are judicial officers and their supporting personnel may not, on these facts, be properly enjoined, and because the complaint does not state a claim against the private defendant under 42 U.S.C. § 1983, I would reverse the judgment of the district court.

Accordingly, I find it unnecessary to discuss the applicability of the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), to injunctions against the maintenance of purely civil actions to which the state or its agents are not parties. *Cf. Louisville Area Interfaith Committee for United Farm Workers v. Nottingham Liquors, Ltd.,* 542 F.2d 652 (6th Cir. 1976). Nor is it necessary to decide whether there is a relitigation exception to the *Younger-Huffman* doctrine, as there is a relitigation exception to the doctrine's statutory analogue, the federal anti-injunction statute, 28 U.S.C. § 2283.