## IN THE MATTER OF THE ESTATE OF DAVID VIALET, DECEASED

Probate No. 29/1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 5, 1988

16

Edith L. Bornn, Esq., St. Thomas, V.I., *for the estate*

Barbara J. Twine, Esq., St. Thomas, V.I., *for heirs at law, Isabelle Scherzi, Jeanette Woodland and Margaret Philipson*

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM AND ORDER

This matter is now before the Court on Motion of Attorney for the Estate for Fees as follows:

I. Spent by Attorney on Probate Matters, Suits in Court, Family Conferences, matters relating to prospective sales, and to clearance on taxes and Cas Cay:

| | |
|---|---|
| 387 hours at rate of $150.00 per hour | $58,050.00 |

II. Spent by Paralegal on drafts and research:

| | |
|---|---|
| 240 hours at $75.00 per hour | 18,000.00 |

III. Spent by Bookkeeper on collections, bank transfers, issuance of checks, maintenance of ledgers, and preparation of accountings:

| | |
|---|---|
| 170 hours at $65.00 per hour | 11,050.00 |
| Total Billing | $87,100.00 |

17

Attorney's fees will be allowed in the amount of 75 hours at $100.00 an hour, $7,500.00. Fees for time spent by paralegals and bookkeepers on staff in attorney's office in the additional amounts of $18,000.00 and $11,050.00, respectively, will be denied. While the Court notes that counsel claims these sums were already spent, the Court is unaware of any authority given by the Court for such expenditures.

## I. BRIEF HISTORY OF THE CASE

David Vialet died testate on November 9, 1979. His Will, dated March 26, 1979, consisted of eight articles, the first providing for the payment of his lawful debts; the second devised to his grandson, David Vialet II, one-half acre of unimproved land of said grandson's selection to be made before any other subdivision was made for the purpose of dividing his estate among his children; the third devised to his daughter, Isabelle, the cottage located above his dwelling house which she previously occupied, the dwelling house to daughter, Margaret, the buildings comprising the "Castle" to his son, Leon, and the trailer to his daughter, Jeanette, all the above to be with sufficient land for the use of the properties devised; the fourth article devised Cas Cay to the Government of the Virgin Islands, unconditionally, for exclusive use as a bird sanctuary preserved in its natural state for the perpetual enjoyment of the people of the Virgin Islands, but with the precatory provision that the Government set off the value of this devise against the payment of any inheritance taxes found to be due from his estate; the fifth article is a residuary provision giving and dividing the rest and residue of decedent's estate equally among his four children; the sixth article expressed his intention not to give any part of his estate to his friends and other relatives, including his brother, Fred Vialet, and disinherits any devisee or legatee of his estate who attempts to contest his Will or any portion thereof; the seventh article names his grandson, David Vialet II, as the Executor of his estate, and his attorney, Edith L. Bornn, as the Executor's advisor; and the eighth article names Attorney Bornn as "Alternate Executor" of the estate and attempts to name the agent upon whom process may be served "in the event my Executor is not a resident of the Virgin Islands."[1]

---

[1] 15 V.I.C. § 235(c)(3) provides that such appointment shall be made by the executor who is a nonresident of the district. This power being exclusive, it follows that this provision in the Will is a nullity.

The Petition for admission of the Will to probate and the issuance of Letters Testamentary to the Executor was filed on May 16, 1980, and granted as early as May 20, 1980, four days later.

At the time the only major items for which cash was necessary were debts of last illness and funeral expenses, which totalled $3,544.08;[2, 3] surveyor's fees to effectuate the subdivision of the land called for by the devises made in the Will which totalled $15,660.00;[4] and other expenses of administration of the estate, including a reasonable attorney's fee. No executor's fee was payable.[5] The Will did not require the Executor to pay the inheritance taxes of each beneficiary under the Will. So that the total of the expenses of administration, apart from routine administration expenses, such as filing and notarial fees, publication of notice to creditors and of notice of hearing of exceptions taken to the Final Account, appraisers' fee and attorney's fees, was $19,204.08. As of the time the estate should have been closed, February, 1981, these expenses with the exception of attorney's fee to be approved by the Court, were as follows:

| | |
|---|---:|
| Court Costs | $ 7.00 |
| Notice to Creditors | 77.75 |
| Doctor's Expenses | 390.00 |
| Hospital Expenses | 355.20 |
| Appraisers' Fees | 3,000.00 |
| Funeral Expenses | 2,803.88 |
| Publication re Final Account | 181.45 [6] |
| Surveyor's Fees | 15,660.00 |
| | $22,476.28 |

---

[2] See Paragraph Five of the Petition for Probate.

[3] See Final Account of Executor as of April 15, 1983, filed April 27, 1983, listing Medical Expenses as follows: Doctor's Expenses $390.00 and Hospital Expenses $350.20; and reimbursement payment of funeral expenses to Fred Vialet in the amount of $2,803.88, a grand total of $3,544.08.

[4] See Paragraph One of Notice dated May 25, 1988, filed by Atty. Barbara Twine, indicating this amount.

[5] In naming his grandson as Executor of his estate, to whom he had given a half acre of his estate at such location as he chose, which choice he was empowered by the Will of decedent to make before any other subdivision was made of his estate, decedent requested that he serve without compensation, obviously as a quid pro quo for the devise. See Paragraph Seventh of the Will.

[6] This figure is listed in the Final Account of April 23, 1983, as $145.00, not $181.45.

The following expenses listed on the Final Account of April 23, 1983, are not included here as, by February, 1981, when the estate should have been closed, these expenses had not taken place, and no attorney's fee had been approved by the Court—neither the $7,200.00 appropriated by the attorney, nor the $50,000.00 additional attorney's fee which she listed as due her as early as April, 1983.

REAL PROPERTY EXPENSES

| | |
|---|---|
| Electrical Charges | $ 6,450.90 |
| Maintenance Expense | 278.26 |
| Real Property Taxes | 22,475.36 |
| Reimbursement to Margaret Philipson for advances | 2,044.69 |
| Reimbursement to David Vialet for Travel | 413.00 |
| Richard Philipson—Maintenance | 2,948.00 |
| Reimbursement to David Vialet for electrical repairs | 135.00 |
| Balance of Surveyor's Fee | 6,860.00 |

In the Verified Inventory filed by the Executor, dated April 14, 1980, and filed in Court on May 16, 1980, he represented to the Court under oath that there came into his hands for which he is accountable to the Court, cash as follows:

PERSONAL PROPERTY:

Peoples Bank (F.D.I.C.)
Claim No. 1-1-20, Checking Account
St. Thomas, Virgin Islands                   $      45.19

Bank of Nova Scotia
Savings Account No.
St. Thomas, Virgin Islands                          52.86

First Pennsylvania Bank
Savings Account No. 02-101651-2
St. Thomas, Virgin Islands                       25,925.57

Bank of America
Savings Account No. 11719-010
St. Thomas, Virgin Islands                       21,126.76

Marine Midland Bank
Chili Gardiner Branch
Rochester, New York
Savings Account No. 520-65834-5                    9,324.68

Marine Midland Bank

Chili Gardiner Branch
Rochester, New York
Savings Account No. 520-64603-7                  51.09

Central Trust
Rochester, New York
Checking Account No. 707-42504-9              1,369.48

Stock Certificates, Lincoln Development Co.,
    Inc., 5 shares                           No Value

making a grand total of $57,895.63. These figures were further verified in sworn appraisal report dated July 7, 1980, filed by B. Anker Jensen and Mario Lewis, appointed by the Court to appraise the assets left by decedent.

These figures show clearly that at this point the estate had more than enough cash to pay its just liabilities so that there was no need to sell any of its real property to obtain funds to pay any deficiency.

The Cas Cay gift was absolute, not conditional. During the eight years since this administration was begun, it was closed because of less than diligent administration on two occasions, through no fault of the heirs.[7] Now they are being called upon to pay fees to the attorney and her assistants in her office after a totally unnecessary protracted eight-year administration period, through no fault of the heirs, totalling $87,100.00.

## II. DISCUSSION

■  We begin this discussion by a legal definition of what a probate administration is and what it is not. The probate administration of estates involves the interpreting of Wills, decreeing of the devolution of property, collection of particularly the personal assets left by decedent, using the assets to pay the administrative expenses and approved claims against the estate, and if any portion is left, distributing same among the heirs entitled thereto. 31 Am. Jur. 2d, Executors and Administrators, Section 6. See also Albuquerque National Bank v. Citizens National Bank (CA5 Tex) 212 F.2d 943.

■  It is not essential to the administration of the estate that the entitled heirs arrive at a division, distribution or settlement of the

---

[7] On June 10, 1981, and on June 11, 1987. The first Order of Dismissal was issued because no action had been taken from June 30, 1980, to April 25, 1983. The second Order of Dismissal was issued because no action had been taken from October, 1984, to June 11, 1987.

estate different to that made in the Will or prescribed in the intestacy statutes, although more to their liking. This is not to imply that the law does not favor such settlements inter sese, as these tend to promote good will, harmony and satisfaction among family members and other interested parties. See 31 Am. Jur. 2d, Executors and Administrators, Sections 17 and 18. But it is obvious that the Court cannot look with favor on achieving such a substitute estate plan if to accomplish this objective requires such a long delay in the administration of the estate as to result in a substantial increase in the cost of administration of the estate, especially of the fees of the attorney in charge of the operation, particularly where, as here, the attorney of the estate was relied upon greatly by decedent as shown by an express provision in his Will, to be the advisor of the Executor, whom he felt would need a very close and trustworthy assistant due to the fact that he is not an attorney at law and is very young and inexperienced in such matters, so that the attorney is virtually single-handedly running the show. Since the attorney for the estate knew that she and the Executor were not dealing at arm's length, the appropriate standard to be adopted by her was that of uberrima fides.

■ Nor is it an essential step in the administration of an estate to sell property, especially the real estate. In fact the law of this jurisdiction provides that the real estate may be sold only where necessary, due to a deficiency in the amount of cash and other personal property available to pay the obligations of the estate, and even then only so much as is absolutely necessary for the purpose. 15 V.I.C. § 492(d). The Motion for fee allowance filed by counsel, on page 17, shows that the heirs are billed nearly Six Thousand Dollars just for services rendered at the closing of the two sales of real estate. This is nearly two percent of the sale price, and is exclusive of additional time billed for as per her affidavit of June 3, 1988.

True, the Court approved these sales, but this was after counsel represented to the Court and insisted, after the Court expressed surprise on a number of occasions, that there was not sufficient cash available to close the estate without effecting these sales. Note, e.g., the contents of the Court's Order dated July 28, 1987, Response of Counsel thereto dated August 26, 1987, and the Court's reply thereto dated October 14, 1987. These writings give a summary of the repeated expressions of the concerns of the Court and many of the heirs about what appeared to be gross mishandling of the assets

of this estate in violation of the laws and rules of the Probate Code. As it turns out, however, the Court was correct in its position that these sales were not necessary to raise funds to close the estate. Obviously, the sales must stand since the buyers are bona fide purchasers for value without notice of any legal impropriety. But the attorney of the estate stands on a completely different footing.

█ Decedent made the precatory expression in his Will that he would be pleased if the Government set off against the value of his devise of Cas Cay to the Government any inheritance taxes due the Government. But this was not a condition attached to the gift. The gift was unconditional. Furthermore, since the Will did not provide that it was the duty of the estate as a whole or pay the inheritance taxes due from all of the devisees, the payment of these taxes was a burden to be borne by the devisees themselves and not by the estate. See 28 Am. Jur. Inheritance, Estate, and Gift Taxes, Section 278, and 42 Am. Jur. 2d Inheritance, Estate, and Gift Taxes, Section 342. Hence, any service rendered to free the heirs in question of this burden is a service to them and not to the estate as a whole. Therefore, payment to the attorney for this service should be sought, if payment can be legally demanded at all (since we may very well have here the action of a volunteer and therefore a gratuitous, unsolicited act) from the individual devisees. Besides, we are faced here with the question of equity. The heirs are by no means inheriting equal shares of the estate, but if counsel is to collect from the estate as a whole the additional thousands of dollars charged by her for services rendered in effecting these sales, the burden of this additional expense of administration will fall on these hapless heirs equally.

█ A careful examination of the file will indicate that from, latest, February 28, 1981, this estate should have been closed. The Executor was appointed on May 20, 1980. He received a very solvent estate, with cash in the amount of $57,895.63, and a much smaller sum of liabilities payable by the estate, $22,476.28, as itemized on page four hereof, so that no sale of real estate of the estate was necessary or legally proper to complete the administration. The Executor was required by law, immediately on his appointment, to publish his six-month notice to creditors. 15 V.I.C. § 391. No claims were filed against the estate. Therefore, in December, 1980, the Final Account with motion and draft Order for publication of hearing to receive from the public any exceptions taken to the Final Account should have been filed with the Court.

And there being no claims against the estate, the final papers to close the estate should have been filed and the estate closed by February 28, 1981, latest.

By that time, as counsel's affidavit of time spent for the benefit of the estate on page 2 shows, she had spent only 28.75 hours in legal services to the estate. But she would need to spend more time, although not an equal amount, to conclude the proceeding. For this reason, the Court has decided to grant her about two and one-half times this amount of time so as not to be unfair to her. She will be granted a total of seventy-five hours to be used as the basis of the lodestar.

There was a time in this jurisdiction when lawyers were permitted to charge fees for their services in probate cases according to the value of the estate, regardless of the services they rendered the estate—the nature of these services, the time spent in rendering these services, the necessity of these services, the quality of these services, or the value of these services to the heirs.[8]

■ But this clearly unreasonable and inequitable standard changed in 1969. In Lucerne Investment Co. v. Estate Belvedere, Inc., 411 F.2d 1205, 1207 (3d Cir. 1969), Judge Albert Maris listed the following as "appropriate criteria for the Court's consideration in awarding attorney's fees as costs to a prevailing party in a civil action under" 5 V.I.C. § 541: "... the time and labor required, the novelty and difficulty of the questions involved, the skill requisite properly to conduct the cause, the customary charges of the Bar for similar services, the amount involved in the controversy, the benefits resulting to the client from the services, and the contingency or certainty of the compensation". 11 V.I. 468, Footnote 4. [Underscoring ours.]

Following these seven criteria enunciated by Judge Maris, we are constrained to comment on them seriatim as they apply to the facts of this case:

---

[8] PROBATE:

  Attorney for Executor or Administrator: Minimum Fee (Up to $5,000.00 Estate) $250.00; Between $5,000.00 and $10,000.00—$250.00 plus 4% of amount of estate in excess of $5,000.00; Between $10,000.00 and $75,000.00—$450.00 plus 3% of amount of estate in excess of $10,000.00; Above $75,000.00—$1,950.00 plus 2½% of amount of estate in excess of $75,000.00; Executor or Administrator who is serving also as attorney for the estate—150% of the foregoing fees.—See Schedule of Minimum Legal Fees, adopted 1969 by Virgin Islands Bar Association.

1. The time and labor required, as distinguished from desired, by the attorney in this case, as we have shown, was no more than 28.75 hours as of the time the Final Account should have been filed in 1980. (See *infra* at 24.) But even if we reasonably increase it as we will, to two and one-half times to allow some latitude for individual differences in practice of different professionals, and to give additional time to prepare and file the final papers to close the estate, e.g., the Computation for Inheritance Tax, the Petition for Distribution, and the draft Adjudication to close the administration, we arrive at seventy-five hours, not 394.75 hours, or 5.26 times the appropriate, and reasonable, and fair amount of time for which the attorney should charge the estate at a fair rate, to complete the lodestar.

2. *Doing only what was required, notwithstanding the comparatively large size of the estate by Virgin Islands standards*, there was no novelty and difficulty of the questions or procedures involved. *All that were involved, in spite of the relatively large size of the estate, were preparation of routine probate forms and doing routine probate procedures.*

3. The comment in two above applies here as well.

4. The customary charges for the Bar in this district for similar services run from a minimum of $75.00 to a maximum of $100.00 per hour, depending on certain subjective factors. This was not a proceeding in which there was any controversy; it was not an adversarial proceeding, but the run-of-the-mill probate proceeding in rem—the claims of the creditors, administration expenses, and the right of the heirs to the balance left against the rem, the assets left by the decedent. It is because of this usual nonadversarial character of these proceedings, with the exception of course, where there is a Will Contest pursuant to 5 V.I.C. App. V, Rule 24, which propels us into a full-blown adversarial civil action, that the fees usually asked by members of the Bar, and granted, in probate cases are somewhat lower than those asked, and granted, in the typical civil lawsuit contest. There just is not that amount of pressure and strain on the able attorney in the average probate proceeding that is almost always present in contested civil litigation. Of course, any attorney, competent or incompetent, can intentionally or innocently make complicated that which is not, is only routine.

5. There is usually no controversy in probate proceedings. So this element or factor is irrelevant here.

6. No unusual benefit resulted to the estate from the services required of counsel to conclude the administration in a timely manner. Indeed, due to counsel's considerable delays, the heirs must have suffered immensely, for they were denied the right to which they were entitled—the timely receipt and beneficial use of their patrimony, for close to seven years.

7. The contingency or certainty element is also inapplicable in this type of proceeding.

See also Lindy Brothers Builders, Inc., of Philadelphia v. American R & S Sanitary Corp., 487 F.2d 161 (3d Cir. 1973).

## III. SUMMARY

The decedent died in November, 1979. Letters were issued his Executor in May, 1980. Therefore, given the usual time frame of eight to nine months from the granting of Letters, where there are no controversial claims or contests outside or inside of the estate, the estate should have been closed by the end of February, 1981, latest.

The two large items which counsel claims delayed the timely closing of the estate, the two real estate sales and resolving the Cas Cay gift, were not necessary for the orderly administration and closing of the estate. We can only speculate why these two large items were perforce involved in the administration of the estate. But it would serve no useful purpose to specify this in this Opinion.

█ In view of the very high degree of trust which the decedent reposed in the attorney for the estate—she drew his Will, she was made personal advisor to his young grandson who is not a lawyer and is inexperienced in such matters, she was made alternate executor (whatever that means)—we take the position it was incumbent on her to act with the utmost good faith. Frankly, we cannot honestly say we believe her conduct in fulfilling the trust reposed in her by decedent met that high standard. The great delays in the administration of the estate, the unnecessary drawing into the administration of these sales and of the Cas Cay item, in the Court's opinion, considering her charges, would have the effect of working exclusively to her financial gain.

█ As to the payment of assistants and bookkeepers working on the staff of retained attorneys, following the teaching of the District Court in Heyl & Patterson International, Inc. v. F. D. Rich Housing of the Virgin Islands Inc. and F. D. Rich Corp. v. Government of

26

the Virgin Islands (Civil No. 75-785 D.C. St.T.) and Stevens v. Padmore, 15 V.I. 294 (1978), we must deny these items. If these items were allowed, it might be only a matter of time before separate additional pay is asked for attorney's secretaries—and, perhaps, even messengers and custodial workers. Even more directly and specifically, on point, see also John, Ptlf. v. Pueblo International, Inc. d/b/a Super Foods Supermarket, Defs., D.C.V.I. (St.T.), Civil No. 83/286 (decided June 10, 1987), in which Chief District Court Judge, the Honorable Almeric L. Christian, said: "In arriving at the 'lodestar', the Court will at the outset eliminate the $3,525.00 sought as attorney's fees, which represents the 47 hours of time spent by a law clerk at the rate of $75.00 per hour. Several firms are attempting to include in the 'lodestar' figure time spent by law clerks, paralegals and even administrative secretaries. No such sums will be allowed by this Court."

## IV. ORDER

It is therefore ORDERED:

1. Counsel will be granted a fee pursuant to the facts of this case and the law applicable thereto. We will grant a fee of 75 hours at $100.00 or $7,500.00. This, of course, does not prevent the heirs from voluntarily granting any additional amount of their inheritance to counsel and her office staff. But that is to be contradistinguished from our task. We are asked to order the estate to pay an amount permitted by law for legal services rendered by an attorney in what should have been to a competent attorney a routine probate proceeding.

2. The Motion to grant the additional sum of $18,000.00 to counsel's office paralegals is denied.

3. The Motion to grant the additional sum of $11,050.00 spent by counsel's bookkeeper is denied.